44581. MERRY BROTHERS BRICK & TILE
COMPANY v. JACKSON.

Argued July 7, 1969—Decided November 7, 1969—
Rehearing denied November 25, 1969—

*Fulcher, Fulcher, Hagler, Harper & Reed, Gould B. Hagler,
N. William Pettys, Jr.,* for appellant.

*Sanders, Hester, Holley, Ashmore & Boozer, Thomas R. Burn-
side, Jr., Richard A. Slaby,* for appellee.

PANNELL, Judge. Ladd Jackson, plaintiff appellee, brought his
complaint against the Merry Brothers Brick & Tile Company,
defendant appellant, in the Superior Court of Richmond County,
Georgia, seeking recovery for injuries sustained when an em-
ployee of the appellant attempted to move a brick unloading
machine, which was on a trailer driven by the appellee, an em-
ployee of Riverside Motor Lines, Inc. The defendant's motion
for summary judgment was overruled and it filed its appeal to
this court. Merry Brothers Brick & Tile Company hereinafter
will be referred to as Merry, and Riverside Motor Lines, Inc.,
as Riverside, for the purpose of brevity. Merry was a manu-
facturer of bricks and Riverside operated a truck line and en-
tered into a contract with Merry to haul and deliver brick to
persons designated by Merry. The contract obligated Riverside
to "accept, at designated shipping points, truck load quantities
of clay products on its trucks and to deliver the same to such
persons and places as may be designated by shipper." River-
side was an independent contractor, furnishing, maintaining and
operating its own vehicles and hiring and paying wages of its
own employees. Jackson, the plaintiff appellee, was a truck
driver for Riverside and regularly went to one of the Merry
plants each working day of the year to receive a load of brick
for transportation. He regularly moved an unloading machine
to the rear of the truck he drove and the unloader had to be
moved to the rear of the truck so that the truck could be loaded
with brick. Officers and supervisory personnel of both River-
side and Merry testified that Jackson had the duty of preparing
the truck to accept loads of brick and that it was his duty to
move the unloading machine to the rear of the truck, although
Jackson testified no one at Riverside informed him of his duties;
that Joe Lewis Jones, an employee of Merry, had the duty of
operating a fork-lift truck primarily for the moving of brick
from the yard to inventory and secondarily helping to load brick

on the Riverside trucks. The unloading machine was what was called an overhead loader and ran on a track on each side of the truck. It was operated by a gasoline motor and this motor had to be cranked and in operation in order to move the unloading machine from the front of the truck to the rear so that the truck could be loaded with brick. Jackson had, on infrequent occasions, requested an employee to move the unloader to the rear with a fork-lift truck when he could not start the gasoline engine, and he had seen other truck drivers ask and obtain similar assistance from Merry employees in the past. It was known by Merry management that Merry employees had on occasions assisted Riverside drivers in readying the Riverside trucks for the loading of brick by the employees of Merry. Jackson testified that no one at Riverside had ever informed him of his duties. On the occasion in question, Jackson was unable to get the gasoline motor started and requested the assistance of Jones, who drove his fork lift onto the truck and was using it for the purpose of moving the unloader to the rear of the truck when it left the tracks and fell to the ground, carrying Jackson with it, causing the injuries for which he seeks damages. Jones had never before assisted in moving one of the unloading machines. Jones stated that at the time he was moving the unloading machine he was given detailed instructions continually about the operation and how to perform it by Jackson. Jackson's testimony is that he said nothing to Jones after requesting him to move the unloading machine. There was some evidence that the rails on which the unloading machine ran were bent and that this may have caused the derailing rather than any negligent act of Jones and that this defect was known to Jackson and he did not warn Jones. Appellant, in its argument, contends that the evidence demands a finding that Jones was a servant of Jackson, on loan, so to speak, and that if any negligence of Jones caused the injuries to Jackson, he was a servant of Jackson at the time, rather than a servant of Merry. The appellee contends that because of the "custom" of the Merry employees, with knowledge on the part of Merry, to aid the Riverside truck drivers in moving the unloaders when assistance was requested by the employees of Riverside extended the ex-

press scope of employment of Merry's employees, and that the activities of Merry employees in so assisting under the circumstances was within the scope of their employment by implication.

Ordinarily, when one lends his servant to another for a particular employment, the servant will be dealt with as a servant of the person to whom he is lent, although he remains the general servant of the person who lent him. *Travelers Ins. Co. v. Clark,* 58 Ga. App. 115, 122 (197 SE 650); *Blakely v. U. S. Fidel. &c. Co.,* 67 Ga. App. 795, 797 (21 SE2d 339). In *Fulghum Industries, Inc. v. Pollard,* 106 Ga. App. 49, 52 (126 SE2d 432), it was announced by this court that the test to be applied in ascertaining if one is a loaned servant is composed of three elements: "(1) that the special master must have complete control and direction of the servant for the occasion; (2) that the general master must have no such control; (3) that the special master must have the exclusive right to discharge the servant, to put another in his place or to put him to other work." This case puts the accent on the question of control. It might be well to observe here that the lack of control by the general master applies solely to lack of control as to the particular matter or occasion involved. The same is true of the rights of the special master to discharge the servant and to put another in his place. This applies only to the special matter or occasion. Ordinarily, one is not the servant of two masters, but the courts of this State have recognized the principle that one may be the servant of two masters and subject to the demands of both or either. See *Hotel Equipment Co. v. Liddell,* 32 Ga. App. 590, 592 (124 SE 92); *Allen v. Landers,* 39 Ga. App. 264, 265 (146 SE 794). Appellant relies upon *Bibb Mfg. Co. v. Souther,* 52 Ga. App. 722 (184 SE 421); *Carstarphen v. Ivey,* 66 Ga. App. 865 (19 SE2d 341); *Reaves v. Columbus Elec. &c. Co.,* 32 Ga. App. 140, 148 (122 SE 824). There can be little question that, in the absence of the "custom" of Merry Brothers to permit its employees to assist in moving the unloading mechanism when its motor power did not operate, this case would probably have to be decided in favor of the appellant, in view of the decision and facts in *Carstarphen v. Ivey,* supra. In that case, the employee of the defendant took a truck to the garage of the plain-

tiff to be repaired by plaintiff and was waiting in the truck while the repairs were made. He was requested by the plaintiff to manipulate the gears of the truck so as to facilitate the making of the repairs to the truck. In following the instructions, the truck driver either disobeyed the plaintiff's instructions or negligently followed them, causing injury to the plaintiff. While this case was on demurrer there was a clear holding, by the majority, that the acts of the driver, even though of attempted benefit for his employer, did not prevent him from becoming the servant, and the sole servant for that occasion, of the plaintiff. However, in this case, we have an additional ingredient, the "custom," or what the jury can find to be a custom, of allowing the employees of Merry to move the defective unloaders so they could perform their duty for Merry of loading the truck. In our opinion, this was sufficient to bring the present case out from under the rule of *Carstarphen v. Ivey,* supra, and make a jury question as to whether the employee of Merry was acting within the scope of his employment. "Acts impliedly authorized or such as are within the 'scope of the employment'—that is, wrongs for which the employer may be held accountable—are said not to be susceptible of precise or even very helpful definition by any phrase or short form of expression." 35 AmJur 986, § 553. In order for an act of a servant to be within the scope of his employment, it is not necessary that what he does be expressly authorized; it can be authorized by implication. *Atlanta Hub Co. v. Jones,* 47 Ga. App. 778 (171 SE 470). See also *Atlantic C. L. R. Co. v. Heyward,* 82 Ga. App. 337, 341 (60 SE2d 641), in which it was held: "If the master adopts a course of conduct in allowing interchanges of work and assistance between employees of various departments without protest, and makes no complaint concerning such conduct on the part of employees so long as the results are beneficial, it cannot adopt the contrary position when the results cease to be beneficial and claim that the act is no longer within the scope of the employment." Factually, there is a difference between that case and the present one. In the case quoted from, the servant was doing the master's work which it was a duty of another servant of the same master to do. While we do not have that situation

here, we do have a situation where the act of the servant was for the benefit of his master as well as the driver of the truck and if the period of acquiescence in such activity was sufficient in the eyes of the jury, they could find that the scope of employment of the servants of Merry in getting the bricks loaded on the trucks had been extended. However, the jury would not be required to so find as they could also find from this very custom that it amounted only to a lending of the servant Jones to the plaintiff for a particular purpose and for that purpose be exclusively under the control of Jackson. Or the jury would be authorized to find under all of the facts here, that on the occasion in question, Jones was a servant of both parties. Accordingly, we must affirm the trial judge in his refusal to grant a summary judgment for the defendant Merry.

*Judgment affirmed. Quillian and Evans, JJ., concur.*