## 44651. GAINESVILLE CARPET MART et al. v. FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF GAINESVILLE et al.

WHITMAN, Judge. Gainesville Carpet Mart and Shuman Supply of Hall, Inc. intervened in a proceeding brought by the Davis-Washington Lumber Company against R. M. Conner, Sr. Contracting Co., Inc.

In this opinion Davis-Washington Lumber Company is referred to as "Davis-Washington"; R. M. Conner, Sr. Contracting Co., Inc. is referred to as "Conner, Inc."; Gainesville Carpet Mart (a partnership) is referred to as "Gainesville Carpet"; Shuman Supply of Hall, Inc. is referred to as "Shuman Supply," and First Federal Savings & Loan Association of Gainesville is referred to as "Loan Association."

The action by Davis-Washington against Conner, Inc. was for the appointment of a receiver to collect and preserve the assets of Conner, Inc., to conduct its affairs and to pay its creditors according to legal priorities.

After their initial interventions Gainesville Carpet and Shuman Supply filed an "additional intervention" directed against the Loan Association. In this latter pleading it was alleged that Conner, Inc. developed real estate and subdivisions and constructed residences; that the Loan Association had for a number of years provided the principal financing therefor; that the Loan Association supervised and directed Conner, Inc., in its expenditures and exercised controls over its planning, construction and selling activities; and that the Loan Association made profits by virtue of interest on the sums advanced for subdivision development, construction money advances, and also on long term purchase money loans to buyers. It was also alleged that the Loan Association took security deeds from Conner, Inc., to the vacant lots upon which houses were later constructed. It was further alleged

that the Loan Association used Conner, Inc., to further its own aims; that the two were partners and joint venturers in the business of constructing and selling dwelling houses with each participating in the planning, management and selling thereof and with each sharing in the profits derived therefrom; and that by virtue of such relationship the Loan Association is liable to those who have supplied material used in the construction of houses for which payment has not been made.

Both sides made motions for summary judgment. The trial court granted the motion of the Loan Association. Gainesville Carpet and Shuman Supply appealed to this court, enumerating the order as error. The case was transferred by this court to the Supreme Court because it was believed that the adjudication below had decided equitable questions (see *Gainesville Carpet Mart v. First Fed. &c. Assn.*, 119 Ga. App. 359 (166 SE2d 831)), but the Supreme Court returned the case to this court. See *Gainesville Carpet Mart v. First Fed. &c. Assn.*, 225 Ga. 315 (168 SE2d 159), holding that the only issue presented by the appeal "was whether the original defendant (R. M. Conner, Sr., Contracting Co.) and First Federal Savings & Loan Association of Gainesville were joint venturers so as to authorize recovery of the amount of claims originally filed by the intervenors from the savings and loan association as well as the assets of the original defendant." *Held:*

1. From the pleadings, depositions and affidavits presented by both sides in support of their motions for summary judgment, the following undisputed facts appear regarding the businesses of Conner, Inc., and the Loan Association, and their relationship with each other:

The Loan Association is a corporation incorporated and organized under the laws of the United States; is subject to the regulations of the Federal Home Loan Bank Board; and is engaged in the making of real estate loans and financing the development of real estate for residential and commercial purposes.

Conner, Inc. developed subdivisions, built and sold homes, and was one of the largest such "operators" in the Gainesville area.

Conner, Inc. was the Loan Association's largest borrower.

The Loan Association makes two general types of loans, i.e.,

loans on improved realty and construction loans. Those made to Conner, Inc., were construction loans.

Construction loans involve a construction loan agreement whereunder the borrower, as inducement for obtaining the loan, furnishes plans and specifications for the improvement and its cost. The lender takes a security deed to the land upon which the improvement will be erected. The borrower agrees to use the proceeds of the loan for the payment of material bills, labor and other costs connected with construction of the improvement, and further agrees that the improvement will be erected and completed free from all material and labor liens. The lender is given the right to inspect during construction and to require corrections of any variances from the plans. Loan funds are disbursed as construction progresses upon periodic appraisals by the lender of the percentage of completion. When construction is completed the final disbursement is made upon an affidavit that all work and materials furnished for the improvement have been paid for.

The affidavit of Fred D. Haynes states that he is vice president and secretary and an employee of the Loan Association. He further states: "[T]here was never any partnership agreement between defendant corporation [i.e., Conner, Inc.] and the Association, nor any agreement whereby the Association would control or participate in the control of the business of defendant corporation or share in the profits and losses of said business, and neither the Association nor any of its officers and agents participated in the planning, locating or selling of defendant's dwelling houses financed by the Association, and that the only participation in the construction of said houses was the regular appraisals by the agents of the Association to determine whether said dwellings were being properly constructed in accordance with local standards, criteria and building practices. The Association did not receive any profits from the construction, the insuring, the managing or the selling of any of said dwellings financed by it for defendant corporation, other than the usual service charges and interest charged to all borrowing members of the Association. The approval, closing, supervising and controlling of defendant corporation's loans with the Association was made in the same manner, under the same policies and instructions, and subject to the same regulations and pro-

cedures applicable to all loans made by the Association to any of its borrowers."

2. It is contended by the appellants that the showing in the evidence of the great volume of loan business between Conner, Inc., and the Loan Association with the latter receiving benefits from the relationship in the form of interest on the loans made, concurrent with a participation by the Loan Association to the extent of approving plans, making appraisals and inspections with a right to require corrections, required a finding by the court below that the Loan Association was a co-adventurer with Conner, Inc., in the business of building and selling houses and, as such, was liable to appellants for the claims they have asserted for labor and materials used in the construction of houses built by Conner, Inc.

In our view the trial court did not err in finding there to be no joint venture or partnership relationship between the Loan Association and Conner, Inc. Contrary to the allegations, there is no showing that the Loan Association ever shared in any profits or losses of Conner, Inc., or that there existed any express or implied agreement to do so. There is no showing that the Loan Association had the right of mutual control and direction in the business or affairs of Conner, Inc.

" 'Broadly, there is a joint enterprise or adventure when two or more combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control, provided the arrangement does not establish a partnership.' *Atlanta Metallic Casket Co. v. Southeastern Wholesale Furn. Co.,* 82 Ga. App. 353, 358 (61 SE2d 196); *Bowman v. Fuller,* 84 Ga. App. 421, 425 (66 SE d 249). There must be not only a joint interest in the objects and purposes of the undertaking, but also a right, express or implied, of each member of the joint venture to direct and control the conduct of the other. See *Holland v. Boyett,* 212 Ga. 458 (1) (93 SE2d 662); *Healan v. Huff,* 81 Ga. App. 202, 205 (1) (58 SE2d 500); 30 AmJur 945, Joint Adventures, § 10." *Security Development &c. Co. v. Williamson,* 112 Ga. App. 524, 525 (145 SE2d 581). Also see *Code* § 75-102.

The relationship of borrower and lender was established. But such relationship does not establish a joint venture. Generally, see 48 CJS 804, Joint Adventures, § 1 (b) (2). In-

terest on sums advanced is not profit; it is the amount which one agrees to pay for the use of borrowed money.

Judgment affirmed. *Jordan, P. J., and Hall, J., concur.*

ARGUED SEPTEMBER 8, 1969—DECIDED FEBRUARY 3, 1970—REHEARING DENIED MARCH 20, 1970—

*Reed & Dunn, R. Elliott Dunn, Jr., Robert E. Andrews,* for appellants.

*Hammond Johnson, Jr.,* for appellees.