## 48450. HELMS v. YOUNG et al.

CLARK, Judge. "You need a program to get the numbers so that you can know the players!" This cry of the stadium vendors is applicable to this appeal in which there are four defendants along with an interested but uninvolved bystander. As each defendant plays a special part in this drama we will designate them respectively in the capacity in which they appear, referring to each thusly: C. O. Blankenship—driver; Roy Morgan— hauler;

Frances Young—truck owner; Strain Poultry Farms, Inc.—subsidiary corporation; and Cagle Poultry Company—parent company.

The bystander is Cagle Poultry Company of which Strain Poultry Farms, Inc. is a wholly owned subsidiary. As the Cagle corporation is not a party to this litigation it will suffice to refer to it by name. When referring to the subsidiary we will do so by name. The party primarily interested in this appeal is John Steve Helms, a minor plaintiff suing through his father as next friend, after having sustained serious personal injuries when the automobile he was driving collided with a tractor-trailer being driven by Blankenship (driver). It should be noted we designate Blankenship as driver rather than servant which is the term used in the complaint. We do this in order to avoid confusion as the pleading avers him to be an employee of all of the other three codefendants. Additionally, his general employment is with Cagle. Cagle also employed Morgan (hauler) as its full-time servant but as a truck weigher, such employment having no connection with this case. We describe Morgan as hauler because he is not involved in this case as Cagle's employee but by reason of his having a side line business, namely hauling poultry from North Georgia growers for delivery to Cagle's plant in Atlanta or to the Pine Mountain plant of Strain Poultry Farms, Inc. It should be observed that both before and after working for Morgan (hauler), Blankenship (driver) had been an employee of Strain Poultry Farms, Inc. when driving trucks owned by Strain but he was not at the time of the occurrence of Strain's payroll.

Strain's business was to supply chickens to processing plants of its parent, Cagle. The bulk of these chickens are raised by independent growers under contract with Strain Poultry and are located in various places throughout Georgia. Strain Poultry owns and maintains several trucks with direct employment of drivers for those trucks as their servants. Strain Poultry also maintains separate contracts with various persons owning their own trucks who employ their own drivers to operate their vehicles. At the time of this occurrence both Young (truck owner) and Morgan (hauler) had such contractual arrangements individually with Strain for their individually owned vehicles and with drivers hired individually and not by Strain. One of the questions for determination is whether the arrangement by Strain with such outside individuals as Young (truck owner) and Morgan (hauler) owning their own vehicle is that of master-

servant or independent contractor. In the opinion we will deal with specific facts which result in our eventual determination of the legal status of this arrangement.

A further complicating factor is that prior to 1969 Young (truck owner) and Morgan (hauler) constituted a partnership engaged in hauling for Strain with each of the two individuals owning a tractor-trailer unit and sharing equally all expenses and profits. Some 12 to 18 months prior to December 10, 1970 (the date on which the instant tort occurred) that partnership had been terminated. At the time of the present incident Morgan's tractor-trailer was in the repair shop for an overhaul so Morgan had arranged with Young's brother for use of Young's tractor by Morgan during the period of time Morgan's truck was being overhauled. Blankenship (driver) was not paid by Young. Details concerning Young's connection with the instant tort will be set forth later when we undertake to determine if Young's relationship as truck owner to Morgan (hauler) was that of a joint venture and also to decide if there was a respondeat superior relationship between Young and Blankenship (driver).

This appeal is by plaintiff from the granting of a summary judgment in which Young (truck owner) and Strain Poultry Farms, Inc. were both exonerated of any liability. The suit continues as to Blankenship (driver) and Morgan (hauler) who remain as defendants below.

In making our decision we will divide our opinion so as to deal separately with the legal status of Young (truck owner) and of Strain Poultry Farms, Inc.

1. Was Young (truck owner) engaged in a joint venture with Morgan (hauler)? Counsel for both the plaintiff and Young recognize the controlling principles to be stated in *Atlanta &c. Casket Co. v. Southeastern &c. Furniture Co.*, 82 Ga. App. 353, 358 (1) (61 SE2d 196) and *Gainesville &c. Mart v. First Fed. &c. Assn.*, 121 Ga. App. 450 (174 SE2d 230). The earlier case stated that "Broadly, there is a joint enterprise or adventure when two or more combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control, provided the arrangement does not establish a partnership." The other case points out that "There must be not only a joint interest in the objects and purposes of the undertaking, but also a right, express or implied, of each member of the joint venture to direct and control the conduct of the other." After agreeing on the law the parties disagree as to the existence of a genuine issue of

material fact. Our reading of the depositions and affidavits confirms that neither Young nor Blankenship had any right of control over the other and therefore this essential element necessary to constitute a joint venture does not exist.

After the termination of the original partnership between Morgan and Young each of them had an independent business relationship with Strain for transportation of poultry. Morgan acquired the use of Young's tractor which was not then being used by Young as a loan in order to carry on his independent agreement with Strain. Young's interest therein was limited to his property interest in his vehicle and in the monies he was to receive from its use by Morgan for Morgan's independent business. The split was fifty-fifty of the net proceeds after the deduction of all expenses incurred on the trip. (R. 83). Morgan's testimony that "The only thing Mr. Young could have done anyway was to have got his tractor or something like that" (R. 66) did not amount to the necessary right of control over Morgan that was required to create a joint venture.

It appears that the legal situation created by the loan of the tractor for a split in the net profits was a bailment for hire terminable at will. "A contract founded upon a consideration, whereby goods are intrusted to another for the execution of a special purpose, after which they are to be returned to the one making the delivery, constitutes the person receiving them a bailee for hire." *Fain v. Wilkerson,* 22 Ga. App. 193 (1) (95 SE 752). See also *South Carolina &c. R. Co. v. Augusta Southern R. Co.,* 107 Ga. 164 (33 SE 36).

2. Was there a respondeat superior relationship between Young (truck owner) and Blankenship (driver)? The answer is in the negative because in the absence of a joint venture the only right of control of the truck owner was with reference to preservation of his vehicle. He had no right of control over Morgan's driver nor the manner in which the driver was to use the truck in performance of Morgan's contract. Young's instruction with reference to obtaining tires at a certain establishment and to watch for "something like a leaky radiator. . . not to let it run out of water" (R. 42) was in no way violative of a bailment during which the owner had no right of control over the driver's activities. The instant case therefore comes within the holdings of *Harvey v. C. W. Matthews Contracting Co.,* 114 Ga. App. 866 (152 SE2d 809); *Whitehall Chev. Co. v. Anderson,* 53 Ga. App. 406 (186 SE 135); *Neve v. Graves,* 26 Ga. App. 378 (106 SE 305); *Simril*

*v. Davis,* 42 Ga. App. 277 (155 SE 790); and *Ousley Co. v. Ledbetter,* 44 Ga. App. 375 (161 SE 634). In all of these cases the vehicle owner whose sole connection was proprietary was ruled not to be liable for its operations.

Appellant argues that Young's affidavit is a self-serving declaration, which is to be construed most strongly against him, and that by drawing inferences from the absence of certain negative averments that a factual issue is created which should be determined by a jury. The record here is not limited to Young's affidavit but includes depositions of Morgan and Blankenship as well as an affidavit by Morgan's brother. These establish uncontroverted facts which exonerate the truck owner. They show Blankenship, driver, was hired by Morgan (R. 118, 156), worked for Morgan alone, not for Young (R. 50, 51, 61, 102, 141), could not be discharged by Young from Morgan's service (R. 61, 118), had never been employed by Young and was never subject to his command (R. 66, 118), and was at all times paid only by Morgan (R. 41, 51, 61), even when Young's vehicle was being used (R. 40, 41, 61, 118), and had no control over expenses (R. 119). Furthermore, Young had no authority over Morgan or the driver as to what products to haul, where to haul them or what route to take (R. 36, 61, 62, 66, 118). Young was in no way involved with any phase of Morgan's independent business with Strain Poultry Farms (R. 62, 118, 119). Most important, the truck owner did not give any directions with respect to the manner or method in which his equipment was to be driven (R. 41, 42, 119), not even to the extent of giving instructions as to what trailer was to be attached to his tractor (R. 119).

"In passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists." *Ussery v. Koch,* 115 Ga. App. 463 (1) (a) (154 SE2d 879). As was said in *Floyd v. Colonial Stores,* 121 Ga. App. 852, 856 (176 SE2d 111): "When uncontradicted and unimpeached evidence is produced as to the real facts, the inference disappears, and does not create a conflict in the evidence so as to require its submission to a jury."

The trial court ruled correctly in sustaining a summary judgment for Young (truck owner).

3. Was Blankenship (driver) the servant of Strain Poultry Farms, Inc.? Appellant contends the answer should be in the affirmative by reason of any one of three legal theories: "(A) the 'borrowed

servant' doctrine; (B) the relationship between Morgan (hauler) and Strain Poultry Farms, Inc. was not that of 'independent contractor' but master-servant; and (C) where Strain Poultry Farms, Inc. interferes with and assumes control of Morgan's activities it becomes liable." (Brief, page 26).

Our legal conclusion must be determined from the facts gleaned from two depositions of Blankenship (R. 30-43 and R. 139-163), two depositions of Morgan (R. 44-67 and R. 71-113) and an affidavit by the manager of the Hauling Divisions of Strain Poultry Farms, Inc. (R. 127-131). This evidentiary material can be summarized thusly: Those trucking operations in which Strain Poultry owned the equipment and hired and fired its own drivers with the exercise of full control of the time, manner, means, and methods of hauling differed from its arrangements with individuals such as Morgan and Young who owned their trucks and tractors. These individual arrangements provided for the hauler to be paid at a certain price per pound depending upon mileage. Morgan had operated for eight years under such an oral contract with Strain which provided that either Strain or Morgan could terminate the agreement at any time upon giving thirty days notice to the other party. Morgan hired Blankenship to drive Morgan's equipment and paid him per load. Strain did not have the right to designate drivers for Morgan nor to terminate drivers hired by Morgan. Strain had no right of control as to any details of the hauling operation, such as the type of equipment, the manner of operation or the maintenance or replacement of this equipment. Thus Morgan had borrowed Young's tractor to use for hauling his own trailers without knowledge of Strain. Strain Poultry's interest was solely in the end result for the chickens to be transferred from the farm to the processing plants. Either Morgan or Blankenship would obtain the information as to locations for pick-up and delivery from personnel of Strain Poultry. In giving this information directly to Blankenship Strain considered itself to be a conduit for Morgan. Whether or not this was legally correct, the information referred only to the scheduling of Morgan's trucks and not to details of delivery such as the route to be taken, the handling of the cargo, or which vehicle was to be used nor any right of control over the driver.

On December 10, 1970, the date on which the collision occurred, Blankenship's trip was as Morgan's employee with Morgan and Blankenship having been notified as to the specific load, the

location thereof, and the final destination. Although Blankenship had at one time been employed as a driver by Strain in the operation of its own trucks, which employment was both before and after the present instance, such employment was not in existence on this particular trip as Blankenship had been employed solely by Morgan six months prior to the collision as his driver for his equipment in the performance of Morgan's contract with Strain.

A. Appellant argues the "borrowed servant" doctrine applied here, citing *Merry Bros. Brick &c. Co. v. Jackson,* 120 Ga. App. 716 (171 SE2d 924) to support this assertion. Under this doctrine a servant may be the general servant of one employer and the special servant of the person to whom he is lent for the particular mission. The *Merry Bros.* case quoted at page 719, *Fulghum Industries v. Pollard,* 106 Ga. App. 49, 52 (126 SE2d 432) that the test to be applied in ascertaining if one is a loaned servant is composed of three elements: "(1) that the special master must have complete control and direction of the servant for the occasion; (2) that the general master must have no such control; (3) that the special master must have the exclusive right to discharge the servant, to put another in his place or to put him to other work." The *Merry Bros.* holding is not applicable to the facts of the case at bar because the three essential elements are not present here. Strain Poultry had no right of control over the details of the hauling operation, although it did have an interest in the results and in connection therewith informed the driver as to the location of the chickens and the place to which they were to be taken, whether in its own behalf or as conduit for Morgan. Morgan had complete control over the manner, means, and method of performance and as such remained the general master. Strain had no right to discharge Blankenship while carrying out his duties as Morgan's driver on Morgan's equipment.

The most recent decision on the borrowed servant doctrine by the Supreme Court is *Montgomery Trucking Co. v. Black,* 231 Ga. 211. The court there reversed our decision in *Black v. Montgomery Trucking Co.,* 129 Ga. App. 36 (198 SE2d 378) in which we had in a summary judgment action determined a genuine issue of material fact under a lease contract for motor equipment including a driver. The Supreme Court pointed out that the contract between the parties was controlling as to their responsibilities thereunder and there was no genuine material

fact issue. Accordingly, the borrowed servant doctrine did not apply. The same situation exists in the case sub judice.

B. Was Morgan (hauler) a servant or an independent contractor? The facts of the case at bar are similar to those in *Harvey v. C. W. Matthews Contracting Co.,* 114 Ga. App. 866 (152 SE2d 809) where this court affirmed a summary judgment motion ruling the relationship to be an independent contractor. There, as here, a truck and driver were furnished to a road construction company for hauling of materials at a specified rate based on weight and distance. Payment was directly to the owner of the truck who, as here, paid all expenses for the operation including driver's services. The contracting company had to accept the truck and driver and had no right to control the driver in the mechanical operation of the truck. Its control of the driver was limited to direction as to where to load and unload the materials and the time thereof. Similar holdings are *Newsome v. Dunn,* 103 Ga. App. 656 (120 SE2d 205) and *Brett v. Thiele Kaolin Co.,* 86 Ga. App. 506 (71 SE2d 687). In the latter case Headnote 1 is directly applicable in stating that ". . . [N]otwithstanding the work was performed under the supervision of an employee of the corporation, who directed the driver of the truck what soil to haul, where to haul it, and when to haul it, and this was the only supervision or control exercised by the corporation over the driver and the truck, and the corporation had no supervision, direction, or control over the driver's mechanical operation of the truck, and had no right to discharge the driver or replace him or the truck, although the corporation may have had the right to discharge the unit consisting of the driver and the truck by terminating the contract with the owner, the driver of the truck was an employee of the owner of the truck and not of the corporation."

In the other controlling authority, *Newsome v. Dunn,* supra, this court upheld the granting of a directed verdict on the basis of the facts creating an independent contractor relationship because the instructions to the driver on how much material was to be hauled and when to haul it with the payment depending upon where the material was to be hauled were ruled not to constitute control over the time and manner of doing the work within the meaning of Code § 105-502 (5). Our court there quoted with approval from *Edmondson v. Town of Morven,* 41 Ga. App. 209 (3) (152 SE 280) that "The act of the employer in identifying the work, or pointing out to the contractor where the work is to

be performed, is not an interference with, or a direction or control of, the manner of the work's execution." See also *Albert v. Hudson,* 49 Ga. App. 636 (1) (176 SE 659) (cert. den.).

The case of *Postal Telegraph-Cable Co. v. Tucker,* 33 Ga. App. 525 (126 SE 860) relied on by appellant is not applicable because the employee there performed all duties incident to the employment under the direction of the employer.

C. The facts do not show any interference or assumption of control of Morgan or Blankenship by Strain Poultry Farms, Inc. and therefore the exception stated in Code § 105-502 (5) would not apply. Such instructions as were conveyed to Morgan and Blankenship by the personnel of Strain Poultry dealt only with the result. The fact that the instructions came from Strain as to the location where the cargo was to be picked up and the number of chickens in the cargo and where the chickens were to be delivered does not amount to an interference as such instructions did not constitute control over the manner in which the contract between Strain and Morgan was to be performed as to the manner, means and method.

Where there exists only the right under the contract to superintend the work to the end that the desired results contracted for are obtained and there is no right or assumption of the right to control the manner in which it is done the relationship is that of an independent contractor. *Lampton v. Cedartown Co.,* 6 Ga. App. 147 (64 SE 495).

4. "Where the evidence produced in a motion for summary judgment entitles the party to judgment through piercing the allegations of the pleadings and showing that there is no genuine issue of material fact, the summary judgment motion should be sustained. [Cits.]." *Crawford v. McDonald,* 125 Ga. App. 289, 293 (187 SE2d 542).

*Judgment affirmed. Hall, P. J., concurs. Evans, J., concurs in the judgment only.*

ARGUED SEPTEMBER 13, 1973 — DECIDED NOVEMBER 29, 1973.

*Cullen M. Ward, Frank M. Eldridge,* for appellant.

*Nall, Miller & Cadenhead, Robert B. Hocutt, Swift, Currie, McGhee & Hiers, Warner S. Currie, Victor A. Cavanaugh,* for appellees.

EVANS, Judge, concurring in judgment. John S. Helms, a minor, filed an action against C. O. Blankenship, Frances D. Young, Roy

Morgan and Strain Poultry Farms, Inc., as defendants, alleging he had suffered personal injuries for which defendants were liable. Complaint alleged that plaintiff was driving a motor vehicle on U. S. Highway 27 (a two-lane highway), and as he approached a curve and a grade (or slope), a tractor-trailer was parked lengthwise across the highway completely blocking both lanes of traffic, with which truck plaintiff's car collided, as a result of the negligence of the defendants. It was alleged that the tractor-trailer was being operated by Blankenship, and was owned by Young and Morgan; and that Blankenship was at the time acting within the scope of his employment as an agent, servant and employee of Young, Morgan, and Strain Poultry Farms, Inc. Motions for summary judgment were made by and granted to Strain Poultry Farms, Inc., and Frances D. Young, absolving them of liability, and plaintiff appeals. The suit remains pending in the court below as to the defendants Blankenship and Morgan. The majority of this court affirms.

I restated the case in my own language, as I could thus better understand it than through the use of the scorecard or program set forth by the majority opinion, listing the players as: driver — hauler — truck owner — subsidiary corporation — parent company — by-stander. With this better understanding I concur in the judgment only.