William R. PUTNAM,
Plaintiff-Appellant-Cross-Appellee,

v.

Robert R. WILLIAMS,
Defendant-Appellee-Cross-Appellant.

No. 80–7389.

United States Court of Appeals,
Fifth Circuit.
Unit B

Aug. 4, 1981.

Skinner, Wilson & Strickland, Warner R. Wilson, Jr., Donald F. Walton, Atlanta, Ga., for plaintiff-appellant-cross-appellee.

Troutman, Sanders, Lockerman & Ashmore, Ralph H. Greil, Atlanta, Ga., William W. Stoudenmire, Mobile, Ala., for defendant-appellee-cross-appellant.

Before FRANK M. JOHNSON, Jr., HENDERSON and ANDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

This is a diversity action removed from the State Court of Fulton County, Georgia to the United States District Court for the Northern District of Georgia on the motion of the defendant, Robert R. Williams, an Alabama businessman and the appellee. Williams was sued by sports organizer William R. Putnam for damages arising from an unsuccessful attempt to form a professional soccer franchise in Atlanta. The district court granted Williams' motion for summary judgment, whereupon Putnam filed this appeal.

In the winter of 1978, Putnam began a search for someone to start an Atlanta franchise of the Super Soccer League. He was advised to approach Williams, a Mobile, Alabama business executive with no previ-

ous involvement in sports franchises. Both parties concede that an agreement was reached between them, but they disagree as to its nature. Williams testified that in return for fund raising assistance he was to receive a percentage of the soccer team's stock. (Williams Deposition at 22). Although he agreed that Williams was to help procure investors, Putnam characterized the transaction as a transfer of stock for money. (Putnam Deposition at 18–19, 24). For the purposes of this motion, however, the defendant accepts the plaintiff's statement of facts as true. Thus, the following synopsis of the facts is that recounted by the plaintiff in the trial court.

After negotiations beginning May 5, 1978, Putnam and Williams reached a verbal agreement pursuant to which Williams would provide approximately $75,000.00 as "seed money" to start the soccer operation in return for a 50% stock interest in Georgia Soccer, Inc., a corporation to be formed at a later date. Putnam, because of his expertise in operating sports franchises, would run the Atlanta organization for which he would receive the other 50% stock interest in Georgia Soccer, Inc. plus a $3,000.00 monthly salary. The corporation would be the general partner in a limited partnership which would operate Atlanta's team in the Super Soccer League. The agreement was never reduced to writing.

Neither the franchise nor the league ever successfully materialized. Williams met with various media officials and held himself out as Putnam's partner in the Atlanta franchise. But, Williams' contributions to the organization attempt were limited to an advance of $2,500.00 to cover some expenses and a request that Putnam contact major creditors to ask for terms of credit. Williams failed to answer Putnam's subsequent calls for additional funds.

After Putnam's counsel had made his formal demand for performance, he filed suit in the State Court of Fulton County, Georgia, seeking approximately $45,000.00 damages representing the sum of debts incurred by Putnam while promoting the franchise. According to the complaint, Williams was indebted for this money because he was Putnam's principal and hence, liable for his agent's actions. Williams filed an answer after removing the case to district court generally denying the substantive allegations of the complaint and filed a counterclaim for recovery of the $2,500.00 he had expended for costs. After discovery, Williams amended his answer and counterclaim, alleging that the claim against him was barred by the statute of frauds and that Putnam's violations of state securities laws precluded his recovery.

The trial court granted summary judgment in favor of Williams based on Putnam's own deposition testimony which showed that he was not an agent of Williams, but the agent of the unborn corporation. The judge then dismissed Williams' counterclaim without prejudice for lack of independent subject matter jurisdiction because the amount in controversy was less than $10,000. Putnam filed a notice of appeal from the order and judgment. Williams then timely filed a cross-appeal from the dismissal of his counterclaim.

■ On appeal, Putnam contends that the trial court erred in granting summary judgment because there are issues of fact as to the nature of the relationship between the parties and the resulting liability of Williams for the debts incurred in connection with Georgia Soccer, Inc. Putnam asserts four grounds of liability: (1) that Putnam was an agent of Williams; (2) that Williams and Putnam were co-promoters; (3) that Williams and Putnam entered a joint venture to organize the corporation; and (4) that Williams breached a contract for the contribution of money to fund the corporation. Putnam's pleadings were never formally amended to reflect the last three theories. However, in considering a motion for summary judgment, the pleadings may be treated as though they had been amended to conform to the evidence filed with the motion when not objected to by the opposite party. *Freeman v. Marine Midland Bank-New York*, 494 F.2d 1334, 1339 (2d Cir. 1974); 6 Moore's Federal Practice ¶ 56:10 at 171 (2d Ed. 1976). Both

Williams and Putnam fully briefed and argued each of the alternative theories in the district court so we are free on appeal to address each of the arguments.

Appellate review of a summary judgment in federal court is governed by the "genuine issue of fact, matter of law" standard set forth in Fed.R.Civ.P. 56. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Georgia precedent indicates that whether the evidence supports a finding of a joint venture, as well as whether an act is within the scope of the venture, is usually a substantial question for consideration by the jury. *Security Development & Investment Co. v. Williamson*, 112 Ga.App. 524, 525, 145 S.E.2d 581 (1965); *Bowman v. Fuller*, 84 Ga.App. 421, 426, 66 S.E.2d 249 (1951). However, even accepting Putnam's version as testified to in his deposition, there is no genuine issue of fact. We can say without hesitation that, under Georgia law,[1] the appellee is entitled to judgment on the agency contention as well as the other grounds constructively raised by the introduction of evidence without objection.

■ As the district court observed, the appellant's own deposition plainly discloses that he was not Williams' agent. Putnam states that he incurred all expenses on behalf of Georgia Soccer, Inc. (Putnam Deposition at 63–64, 79, 111, 153). Although the corporation was never organized and thus there was no principal in the trust sense, Putnam's efforts were intended to promote the envisioned corporate entity only. Moreover, there is no evidence that Williams ever agreed to reimburse Putnam from his own funds or to incur personal liability for each debt. No simple principal-agent association existed.

■ The assertions of joint venturer and co-promoter status are considered together. Partnership principles, such as the rule that partners are agents *inter sese*, often govern the relationships of joint ven-

turers and co-promoters. *Fulton National Bank v. Didschuneit*, 92 Ga.App. 527, 532, 88 S.E.2d 853 (1955). *See Moran v. H.W.S. Lumber Co.*, 538 F.2d 238 (9th Cir. 1976); *Rayonier, Inc. v. Polson*, 400 F.2d 909 (9th Cir. 1968); *Singer Housing Co. v. Seven Lakes Venture*, 466 F.Supp. 369 (D.Colo. 1979). There is joint liability with respect to dealings with third persons if the promoters or venturers have an understanding to that effect. 18 C.J.S. Corporations § 129 (1939). Even though Williams was not Putnam's principal as such, he and Putnam each may have been an agent of the other, if they explicitly agreed to joint liability as co-promoters or joint venturers with respect to given debts. Absent agreement, though, persons do not become venturers as between themselves simply by virtue of the pursuit of joint interests in a common excursion. *See Keaton v. Fenton*, 147 Ga. App. 579, 579–80, 249 S.E.2d 629 (1978); *Gainesville Carpet Mart v. First Federal Savings & Loan Assn.*, 121 Ga.App. 450, 453, 174 S.E.2d 230 (1970). Similarly, a person who merely subscribes for stock in a corporation before it is legally formed does not become a partner with other subscribers who engage in business on behalf of the proposed corporation. 68 C.J.S. Partnership §§ 42–43 (1950). Press releases referred to Putnam and Williams as partners. To accept that report as conclusive, however, would be tantamount to permitting the press to do our work for us. We must undertake an analysis of the relevant facts in light of the foregoing legal principles in order to classify the business relationship of the parties.

■ Our first concern is whether Putnam and Williams were co-promoters of Georgia Soccer, Inc. or members of a joint venture in its operation. A joint venture relationship is characterized by a number of identifying features. In a joint venture arrangement, two or more people combine property

---

1. This agreement was reached through a series of negotiations in Alabama and Georgia. But Georgia's conflicts of law statute exhibits a preference for the law of the place of performance of the contract. When writings or con-

tracts are intended to have effect in Georgia, they must be executed in conformity with the laws of that state. Ga.Code Ann. § 102–108 (1963).

and skill to conduct for profit a single business transaction, as opposed to a continuing business enterprise. The venturers enjoy joint proprietary interest, the right to control each other's conduct, and the obligation to share in losses as well as profits. *Bowman v. Fuller*, 84 Ga.App. 421, 425, 66 S.E.2d 249 (1951). *See Sasportes v. M/V Sol De Copacabana*, 581 F.2d 1204 (5th Cir. 1978); *DuBuque Stone Products Co. v. Fred L. Gray Co.*, 356 F.2d 718 (8th Cir. 1966); *Crest Construction Co. v. Insurance Co. of North America*, 417 F.Supp. 564 (W.D.Okla. 1976). Each participant is both a principal for himself and an agent for his associates when acting within his scope of authority on behalf of the venture. *Helms v. Young*, 130 Ga.App. 344, 346–47, 203 S.E.2d 253 (1973). *See De Witt v. Sorenson*, 288 F.2d 455 (5th Cir. 1961); *Rogers v. Edwards*, 413 F.Supp. 933 (D.Minn.1975) *aff'd* 547 F.2d 1056 (8th Cir. 1977).

■ By comparison, Putnam and Williams agree that the corporation they intended to create was to have been the general partner in a partnership aspiring to provide Atlanta with an indoor soccer team for many years to come. The operational control over this long-term business enterprise was vested in Putnam only. (Putnam Deposition at 19, Williams Deposition at 40.) We cannot say there was no joint venture to promote financing of the limited partnership as a whole. Nonetheless, the single aspect of the deal in which Williams and Putnam shared responsibility was the initial fund raising through solicitation of limited partners. (Williams Deposition at 22, 23.) As a matter of undisputed fact, Williams assumed no duties on behalf of the corporation to be formed. He did not assist in the selection of the franchise's legal counsel, public relations specialists or coach. (Williams Deposition at 54.) Furthermore, Williams neither personally incurred any debt nor did the creditors look to him for payment of the indebtedness on behalf of this envisioned corporate entity. (Putnam Deposition at 63–64, 113.) If he was a co-promoter or joint venturer, as a matter of fact the agreement did not extend to these operational debts of the proposed corporation and as a matter of law he is not liable for their payment.[2]

Putnam's final basis of recovery, as paraphrased by Williams, is the alleged breach of a stock subscription agreement. Yet, to the contrary, Putnam avoids taking the position that a contract for the sale of securities was involved here. His brief, in carefully measured words, states that Williams violated "a joint venture or agency agreement which at some point in time would have involved the Defendant not only as a promoter and incorporator of Georgia Soccer, Inc., but also as a subscriber for the initial shares of stock." (Appellant's Brief at 22). Clearly Putnam hoped to successfully distinguish the oral agreement and a subscription contract so that the agreement would not come within the purview of Ga. Code Ann. §§ 22–504(b) (1968), 109A–8–319 (1962) and Ga.Code Ann. § 97–105 (1975).[3] The former sections provide that a contract for the sale of securities, such as a subscription agreement, must be in writing and signed by the party against whom enforcement is sought. *See Super Valu Stores, Inc. v. First National Bank of Columbus,*

---

**2.** As a co-promoter or joint venturer, Williams would have been liable in contribution for only one-half of the expenses. *See* Ga.Code Ann. § 75–206 (1981); 18 C.J.S. *Corporations* § 139 (1939); 48 C.J.S. *Joint Adventures* § 12 (1947). Thus, the appellant's prayer for relief is inconsistent with these two theories of recovery. Furthermore, the right to obtain contribution doesn't arise until a judgment has been entered on the debt. *Cf. Evans v. Lukas*, 140 Ga.App. 182, 230 S.E.2d 136 (1976) (joint tort-feasors). As Williams points out, many of the creditors who provided goods and services to the corporation apparently have not yet filed suit on

their claims. (Appellee's Brief at 6). Contribution insofar as these sums are concerned would be premature.

**3.** Section 105 requires the filing of a registration statement in connection with all but certain exempt intrastate securities sales. The appellant contends that the transaction was not a contract to sell a security. The possibility that it was a contract to sell, but one that was exempt from § 105 was not discussed. We do not address these issues because for lack of a writing the agreement is not enforceable anyway.

Ga., 463 F.Supp. 1183 (M.D.Ga.1979); *Murrey v. Specialty Underwriters, Inc.*, 233 Ga. 804, 213 S.E.2d 668 (1975).

▋ Regardless of the label the appellant affixes to it, Williams' contract with Georgia Soccer, Inc. in essence was a subscription agreement. Once again, the appellant's own deposition testimony disproves his allegation to the contrary. He states:

A. ... That corporation would be owned 50 percent by Mr. Williams and 50 percent by myself;

Q. Mr. Williams was to pay for his 50 percent—

A. $75,000.00.

(Putnam Deposition at 24.) The promise to help secure funding was made on behalf of the limited partnership, not Georgia Soccer, Inc. Promotion was evidently not a material component of Williams' stock purchase agreement with the corporation. Moreover, Williams' status as a subscriber to the stock was determined by the contemplated stock subscription agreement, and the fact that no stock was actually issued does not mean that Williams was simply a lender whose promise need not be in writing to be enforceable. *See Hoppe v. Rittenhouse*, 279 F.2d 3, 8 (9th Cir. 1960). Instead, failure to incorporate or nonissuance of the stock signifies Williams' agreement to subscribe was never acted on by the contemplated corporation and thus he would be under no obligation, even if the agreement were in writing. *National Bank v. Amoss*, 144 Ga. 425, 433, 87 S.E. 406 (1915); Ga.Code Ann. § 22–504(a) (1962). Suffice it to say, that since this contract is not in writing and there was no evidence submitted with the motion for summary judgment which would imply performance by Putnam so as to remove the case from the statute of frauds, the oral agreement could not be enforced against Williams in any event. Ga.Code Ann. §§ 22–504(b) (1968), 109A–8–319

(1962). *Compare Super Valu Stores, Inc. v. First National Bank of Columbus, Ga.*, 463 F.Supp. 1183. Thus, the law also precludes recovery by Putnam on a contractual theory.

After Putnam's suit was dismissed on the merits, Williams' counterclaim was also dismissed for lack of independent subject matter jurisdiction because the amount in controversy was less than $10,000.00. The appellee contends that the judge abused his discretion in dismissing the compulsory counterclaim because it was ancillary to the main claim and remained alive despite the absence of the jurisdictional amount.

▋ As a general rule, when the jurisdiction of the court has attached to an ancillary claim, it will not be ousted by the subsequent dismissal of the main suit on the merits. *Kirby v. American Soda Fountain Co.*, 194 U.S. 141, 24 S.Ct. 619, 48 L.Ed. 911 (1904). The court is not compelled to recognize its continued jurisdiction, but, in its discretion, may proceed with the counterclaim. In fact, the preferred practice, when no extensive proceedings on the ancillary claim have begun in federal court, is to dismiss the counterclaim so that the case may be brought in state court where it belongs. *National Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386 (3d Cir. 1973). During the oral argument, the appellee urged that dismissal of the counterclaim by the district court was error because the statute of limitations has run on Williams' cause of action in the state court. Hence, he says, the dismissal without prejudice was actually dismissal with prejudice. Williams refers to Ga.Code Ann. § 97–114(c) (1974) which prohibits an action arising from the sale of a security which is brought more than two years from the date of the sale or contract to sell. This limitations period applies to two of the three counts in the appellee's counterclaim.[4]

---

4. In the three-count counterclaim, Williams contended that the $2,500.00 was recoverable because it was a loan, and, alternatively, it was given pursuant to the sale of a security which was void for want of registration in accordance with Georgia securities laws and for violation of Section 10(b) of the Securities and Exchange Act of 1934. The statute of limitation for the alleged state and federal securities laws violations is two years. *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 429 F.Supp. 359, 362 (N.D.Ga.1977); *Mooney v. Tallant*, 397 F.Supp. 680, 681–84 (N.D.Ga.1975); *Dehler v. Setliff*, 143 Ga.App. 430, 431, 238 S.E.2d 723 (1977).

Assuming the pendency of the action in federal court did not toll the state statute, a point on which we express no opinion, the appellee's claim as to securities laws violations would have been untimely if filed in state court on the day this case was argued before us. When the counterclaim was dismissed in the district court on April 28, 1980 however, the two-year period from the date of the alleged "sale" in early May, 1978, had not elapsed. Williams had the opportunity to file a state action to recover the $2,500.00 based on securities laws violations, but failed to do so. Accordingly, the judgment of dismissal was not prejudicial at the time of its entry. The judge did not abuse his discretion in refusing to retain the ancillary claim.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.