**SIMS CRANE SERVICE, INC.,**
**Plaintiff-Appellant,**

v.

**IDEAL STEEL PRODUCTS, INC.,**
**Defendant-Appellee.**

**No. 83–8732.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 15, 1985.

William A. Trotter III, Augusta, Ga., for plaintiff-appellant.

Wyck A. Knox, Jr., Augusta, Ga., for defendant-appellee.

Before RONEY and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

R. LANIER ANDERSON, III, Circuit Judge:

Sims Crane Service, Inc. ("Sims") appeals from a judgment of the district court granting a directed verdict in favor of Ideal Steel Products, Inc. ("Ideal"). The case requires an interpretation of the Georgia bailment for hire statute.

## I. FACTS

Ideal leased a crane and an operator from Sims to dismantle a concrete plant. Mr. John Wylds, branch manager for Sims, inspected the job site to determine the type of crane needed for the job. While at the site, Wylds inspected a concrete hopper which the crane was to lift. There is conflicting evidence as to whether an officer of Ideal, Mr. Frank Winn, represented the weight of an empty hopper to be 25,000 pounds or whether he represented the weight as 35,000 pounds. Based on the inspection and Winn's representation, Wylds selected an appropriate crane.

Sims provided an operator with the crane, Mr. Everett Huckabee. Huckabee was responsible for determining the distance of the crane to the object to be lifted and the length of the boom, important factors in determining how much the crane would lift on a given attempt.

When Huckabee first attempted to lift the concrete hopper, he was unable to do so. Ideal employees then removed some of the material from the hopper. There is conflicting evidence whether Huckabee was informed of the substantial amount of material that remained in the hopper. Huckabee testified that the Ideal employees told him there was only a "little stuff to the side." Winn testified, however, that he told Huckabee that he estimated the weight of the material remaining in the hopper at between 10,000 and 15,000 pounds.

Ideal was responsible for rigging the hopper. After the first attempted lift, Huckabee was concerned that the hopper was improperly rigged, causing the load to swing. Winn suggested that they tie the hopper to one of the trucks at the job site to prevent the swinging. This was done, and when Huckabee attempted a second lift, the hopper twisted, causing the boom to collapse. A subsequent investigation revealed that the hopper weighed in excess of 60,000 pounds.

At the close of plaintiff's case, the district court granted a directed verdict in favor of Ideal, concluding that no reasonable juror could find that Ideal exercised complete control over Huckabee and that no reasonable juror could conclude that Ideal was grossly negligent.

## II. DISCUSSION

■ Georgia's bailment-for-hire statute provides:

(a) The duties of the hirer of things are:

(1) To put the thing to no other use than that for which it is hired;

(2) To take ordinary care in its use;

(3) To redeliver the thing at the expiration of the bailment; and

(4) To comply generally with the terms of the hiring.

(b) If the bailor sends his own agents with the thing bailed, the hirer shall not be liable for the acts of such agents but shall only be liable either to the bailor or to third persons for the consequences of his own directions and for gross neglect.

Ga.Code Ann. § 44–12–62 (1982); *see also* Ga.Code Ann. § 12–203 (Harrison 1973). The parties agree that an interpretation of this statute, in light of the facts developed in the district court, controls the resolution of this case. Similarly, the parties agree that a directed verdict is appropriate under federal law only where the facts and inferences point so overwhelmingly in favor of one party that reasonable men could not find to the contrary. *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).[1]

### A. *Borrowed Servant Doctrine*

■ The Georgia courts equate the "directions" referred to in Ga.Code Ann. § 44–12–62 with the borrowed servant doctrine. In *Helms v. Young,* 130 Ga.App. 344, 203 S.E.2d 253, 258 (1973), the Georgia Court of Appeals referred to the leading case[2] interpreting § 44–12–62 as a "recent decision on the borrowed servant doctrine." For other cases decided directly under § 44–12–62 and supporting the conclusion

that Georgia law equates the "directions" referred to in the statute with the borrowed servant doctrine, see *Montgomery Trucking Co. v. Black,* 231 Ga. 211, 200 S.E.2d 882, 883 (1973); *Mitchell v. Burden Brothers, Inc.,* 126 Ga.App. 75, 189 S.E.2d 909 (1972). Under the borrowed servant doctrine, in order for the special master to be responsible for the negligence of the borrowed servant, Georgia precedent requires an examination of the following three factors:

(1) that the special master must have complete control and direction of the servant for the occasion; (2) that the general master must have no such control; (3) that the special master must have the exclusive right to discharge the servant, to put another in his place or to put him to other work.

*Helms v. Young,* 130 Ga.App. 344, 203 S.E.2d 253, 258 (1973).

In the instant case, the special master, Ideal, had some control over the servant, Huckabee. It is clear, however, that Ideal's control over Huckabee fell far short of the "complete control and direction" required to render Ideal liable for Huckabee's negligence. *See Mitchell v. Burden Brothers, Inc.,* 126 Ga.App. 75, 189 S.E.2d 909, 911 (1972) (giving directions as to movement of vehicle, even at moment of collision, does not authorize a finding of complete and exclusive control). Moreover, the undisputed evidence shows that Sims retained the right to select a replacement operator. *See Helms v. Young, supra.* In short, no reasonable juror could find that Huckabee was the borrowed servant of Ideal, and the district court properly directed a verdict for Ideal on the issue of direction and control.[3]

---

**1.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

**2.** *See Montgomery Trucking Co. v. Black,* 231 Ga. 211, 200 S.E.2d 882 (1973).

**3.** Ideal's potential liability pursuant to the borrowed servant doctrine is to be distinguished

from another theory of liability—one based upon Ideal's own negligence as opposed to Ideal's responsibility for the negligence of Huckabee—which apparently was neither alleged in Sims' complaint nor asserted at trial. Although few Georgia cases have addressed the issue of the liability of a bailee for his own negligence, we are satisfied that § 44–12–62(b) was not intended to relieve a bailee from the consequences of its own negligence. In *Brown v. Georgia Kaolin Co.,* 60 Ga.App. 347, 4 S.E.2d 100

## B. *Gross Negligence*

 The resolution of the borrowed servant issue does not, however, end our inquiry. Under § 44–12–62, Ideal would also be liable to Sims if Ideal committed "gross neglect," and the operator was merely negligent.

Sims presented evidence to show that Ideal represented the weight of an empty hopper to be 25,000 or 35,000 pounds. There was also evidence from which the jury could infer that Ideal, or its agents were aware of the substantial amount of material remaining in the hopper (the total weight of the material and the hopper actually exceeding 60,000 pounds), but that they made no effort to communicate this fact. We conclude that a juror could find gross neglect from the above evidence, and reasonable inferences therefrom. *See Boeing v. Shipman*, 411 F.2d at 374.

> [W]hen facts alleged as constituting gross negligence are such that there is room for a difference of opinion between reasonable men as to whether or not negligence can be inferred, and if so, whether in degree the negligence amounts to gross negligence, the right to draw the inference is within the exclusive province of the jury.

*McDaniel v. Gysel*, 155 Ga.App. 111, 270 S.E.2d 469, 470 (1980).

Accordingly, we conclude that the district court erred in granting a directed verdict in favor of Ideal on the gross negligence issue.

Thus, we affirm the district court's grant of a directed verdict on the issue of direction and control; we reverse the district court's directed verdict in regard to Ideal's alleged gross negligence, and we remand for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

---

(1939), plaintiff, a third party, sought recovery against a mining company for injuries sustained in an automobile accident. Plaintiff posited two theories of recovery: first, that the driver of the truck that hit plaintiff was a borrowed servant under the statute and, second, that the defendant-mining company negligently overloaded the truck, causing its brakes to fail. With respect to the second theory, the court held that the evidence did not warrant a finding of negligence on the part of the mining company, the court thus assuming that a bailee would be liable for its own ordinary negligence. Because we can conceive of no sound policy reason for relieving a bailee of liability for his own independent acts of negligence when a bailor sends his agent with the thing bailed, and because the *Brown* decision indicates that there is such liability, we conclude that there is such a cause of action based on the ordinary negligence of the bailee itself, and notwithstanding the fact that the bailee may not be responsible for the negligence of the bailor's driver under the borrowed servant doctrine. We express no opinion as to whether or not Sims should be permitted to amend his pleadings and assert such a claim on remand. If Sims is permitted to assert the claim, then of course Ideal can interpose any appropriate defenses, *e.g.*, a defense under Georgia's comparative negligence statute, Ga.Code Ann. § 51–11–7 (1982).