CONSTANTINE EFSTATHOPOULOS, AS ADMINISTRATOR AD PROSEQUENDUM OF PETER EFSTATHOPOULOS, DECEASED, PLAINTIFF-RESPONDENT, v. FEDERAL TEA COMPANY, A CORPORATION, AND JAMES BURKE, DEFENDANTS-APPELLANTS.

Argued October 20, 1937—Decided January 26, 1938.

For the appellants, *Lindabury, Depue & Faulks* (*Burtis S. Horner,* of counsel).

For the respondent, *William Harda Smith* (*Irving Mandelbaum,* on the brief).

The opinion of the court was delivered by

PERSKIE, J. The primary question requiring decision in this cause is whether, at the time of the alleged accident, defendant's employe was engaged in his master's business so as to render the master vicariously liable for decedent's death. We resolve the question affirmatively.

The action is under our Death act. Respondent, plaintiff below, as the administrator *ad prosequendum* of the estate of his infant son, sought to impose liability upon appellant Federal Tea Company and its servant, James Burke, both defendants below, for the alleged wrongful death of his infant son. The liability thus sought to be imposed upon defendants was predicated upon the alleged negligence of defendant's servant in operating his master's truck. Burke, the servant, filed no answer, and plaintiff proceeded against the master, Federal Tea Company, alone. On the trial of the cause, there developed a sharp conflict as to whether Burke had been involved in the accident at all; and if so, whether he had been negligent; and lastly whether he was engaged in his master's business. The cause was submitted to the jury which returned a verdict, upon which judgment was entered, in favor of the plaintiff and against the defendants, in the sum of $3,000, plus costs of $119.64. Hence this appeal.

Defendant set down ten grounds of appeal but the only ground argued is that the trial court erred in refusing to direct a verdict in its favor. That, then, will be the only ground considered. *Eggert* v. *Mutual Grocery Co.,* 111 *N. J. L.* 502, 503; 168 *Atl. Rep.* 312.

We have had submitted to us only that part of the record which concerns or treats with the relation existing between

defendant and its servant at the time of the accident. Defendant concedes that this is the only phase of the cause that merits our consideration. From the part of the record thus submitted, we learn that defendant was engaged in the business of selling tea, coffee, cocoa, groceries, &c. It appears that canvassers were sent out by the defendant to procure customers who in turn were visited by salesmen to procure orders and make collections. Burke was originally employed as a canvasser and subsequently became a salesman and collector. Each collector was assigned a definite route, but the policy of the company was to allow its collectors to solicit in districts other than those to which they were assigned. Defendant furnished each collector with a small truck to be used in the conduct of its business. Each employe, including Burke, kept the truck in his own garage or upon his own premises. Periodic reports of work done and funds collected were required to be furnished to defendant by its employes. On November 30th, 1933, Thanksgiving Day, Burke was at his home preparing such a report for defendant. He had need for a certain book in which there was necessary data to make his report and he was unable to locate it. Upon reflection, he reminded himself that a few days before he had visited some friends in Orange, New Jersey, and that he might have inadvertently left the book at that place. Accordingly, he started from his home in Irvington, in defendant's truck, for the primary purpose of procuring the book, and at the same time incidentally paying a social call upon his friends in Orange. It should be marked that Orange was not in Burke's district, yet there is evidence that he had, prior to the day in question, solicited and procured business there. While en route to Orange the accident in question occurred. Defendant, on the other hand, offered proof from which the jury, had it so chosen, might well have concluded that Burke was not on his master's business; or acting within the scope of his employment at the time of the accident.

1. Under these conflicting circumstances, was the learned trial judge correct in refusing to direct a verdict, and in submitting the cause to the jury upon the theory that, in

making the trip for the required book, Burke was on his master's business, and was acting within the scope of his employment? We think so. We have held time and again that defendant's ownership of an automobile driven upon a public highway, as it was driven here, raises a presumption of fact that such automobile was in the possession of the defendant, if not personally, then through its servant the driver, and that such driver was acting within the scope of his employment; and that both or either of these presumptions may be overcome only by uncontradicted proof to the contrary, but that if the evidence is contradictory or reasonably subject to contradictory interpretations, the question of liability is for the jury. A few of the many cases so holding are *Doran* v. *Thomsen*, 76 *N. J. L.* 754; 71 *Atl. Rep.* 296; *Missell* v. *Hayes*, 86 *N. J. L.* 348; 91 *Atl. Rep.* 322; *Mahan* v. *Walker*, 97 *N. J. L.* 304; 117 *Atl. Rep.* 609; *Tischler* v. *Steinholtz*, 99 *N. J. L.* 149; 122 *Atl. Rep.* 880; *Onufer* v. *Strout*, 116 *N. J. L.* 274, 276; 183 *Atl. Rep.* 315.

We do not think, however, that the defendant carried the burden thus placed upon it. Defendant did not present uncontradicted proof that Burke was not engaged in his employer's business. To the contrary, the proof is uncontradicted that it was part and parcel of Burke's employment to prepare and submit written reports to his employer of the business done and collections made by him. The trip in question was primarily occasioned by the need for procuring a book which was necessary and vital to the completion of the report which the servant was in duty bound to make and submit to his master. Clearly, then, the jury might well have found, as it apparently did find, that a trip made for such a purpose was made by the servant while in the scope of his employment.

2. Nor does the fact that Burke combined with this trip a social visit to his friends constitute, under the proofs exhibited, an abandonment, *per se*, of his master's business. The applicable rule of law is well settled. To relieve a master from liability for an act done by the servant who was engaged in his master's work, the act done by such servant must have

been entirely disconnected from the service. *Evers* v. *Krouse,* 70 *N. J. L.* 653; 58 *Atl. Rep.* 181; *Dunne* v. *Hely,* 104 *N. J. L.* 84, 86; 140 *Atl. Rep.* 327. Here the proof is that the social phase of the trip was merely incidental to, and not entirely disconnected from, the primary business phase thereof. That being so, the jury, therefore, was fully justified in finding that Burke made the trip for his master while acting within the scope of his employment. And the result reached by the jury is further justified even if it were assumed, but not so decided, that the social phase of the trip could properly be classified as a deviation from the master's employment. The "question whether there was a deviation from the master's employment to the extent that such deviation was tantamount to an act disconnected from the servant's employment is * * * according to the well settled authority * * * a mixed question of law and fact." *Dunne* v. *Hely, supra* (at *p.* 86). Thus, under the contradictory proofs exhibited, or because of the contrary deducible interpretations and inferences to which these proofs were reasonably susceptible, or both, a jury question was present. *Missell* v. *Hayes, supra; Jennings* v. *Okin,* 88 *N. J. L.* 659, 661; 97 *Atl. Rep.* 249; *Dunne* v. *Hely, supra.*

In fine, under all the circumstances exhibited, the cause was properly submitted to the jury.

Accordingly, the judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, HEHER, PERSKIE, DEAR, WOLFSKEIL, RAFFERTY, JJ. 9.

*For reversal*—CASE, BODINE, DONGES, JJ. 3.