33084.   ATLANTIC COAST LINE R. CO. *v.* HEYWARD.

Decided July 31, 1950.

*Bouhan, Lawrence, Williams & Levy,* for plaintiff in error. *Edwin Maner Jr.,* contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ ■ Ground 1 of the amended motion for a new trial assigns error on the following charge of the court: "A tort is within the scope of the servant's employment if the servant in doing the act is motivated in part at least by a desire to serve his employer, and if it appears that the act out of which the tort originated was not an extreme deviation of the normal conduct of such employee." It is urged that this excerpt from the charge states an erroneous principle of law in laying down the rule that only extreme deviation from the normal conduct of an employee will serve to take the act out of the course of employment. It must be taken into consideration that the rights and obligations of the parties here depend upon the Federal Employers' Liability Act and applicable principles of common law as interpreted and applied by the Federal courts. *Atlantic Coast Line R. Co.* v. *Anderson,* 200 *Ga.* 801, 803 (38 S. E. 2d, 610). In Sheaf *v.* Minneapolis, St. Paul & S. S. M. R. Co., 162 Fed. 2d, 110, it is held as follows: "The test of the master's liability for a fellow servant's act is the fellow servant's pur-

pose to further the master's business. Otherwise the act was not committed in the discharge of his duties and was not within the scope of his employment." In that case it was held that the assault by the fellow servant was for purely personal reasons and not in connection with any act which might have been held to further the interests of the employer. Here the jury was authorized to find that the fellow servant, in committing the act which resulted in the injury to the plaintiff, was seeking to further the master's business. Under such circumstances the court properly instructed that such an act would be within the scope of employment if it was not an extreme deviation from the employee's normal conduct. Tiffany, *Agency*, § 38; Efstathopoulos *v.* Fed. Tea Co., 119 N. J. L. 408 (196 Atl. 470); Dolinar *v.* Pedone, 63 Cal. App. 2d, 169 (146 Pac. 2d, 237); Fultz *v.* Lange, 238 Wis. 342 (298 N. W. 60); O'Dell *v.* Universal Credit Co., 118 W. Va. 678 (191 S. E. 568); Brayton *v.* Carter, 196 Okla. 125 (163 Pac. 2d, 960). Such deviation from the normal course of conduct is not the same as deviation from the scope of employment, and it must occur within the scope of employment. While, construing the charge as a whole, this was made plain to the jury, it is nevertheless couched in very broad language and might, in certain cases, constitute error. It is not error here for any reason assigned.

■ Grounds 2 and 3 of the amended motion for a new trial contend that the trial court erred in giving the following in charge to the jury: "Authorization to engage in another and different service as a part of one's employment may arise from the implied consent of the employer. . . I charge you further that where employees have the habit of exchanging work or assisting each other in their duties, and the employer knowingly acquiesced in such action, that the employee so engaged is still acting within the scope of his employment." There was some evidence from which the jury might have found that, although the plaintiff and the fellow servant whose act caused his injury worked in different departments of the defendant railroad company, the employees of the separate departments in general, and the plaintiff and certain friends of his in another department in particular, did interchange duties and help one another on occasion; that these interchanges were made with

the knowledge and consent and under the direction of the supervisors of these employees, and were made with sufficient openness and frequency so that the company was, or ought to have been, cognizant of that fact, and that it had never reprimanded any employee for going to the assistance of another employee, whether in the same department or not, so far as the evidence in this case shows. The contention of counsel that these charges were unauthorized by the evidence is therefore without merit. If the master adopts a course of conduct in allowing interchanges of work and assistance between employees of various departments without protest, and makes no complaint concerning such conduct on the part of employees so long as the results are beneficial, it cannot adopt the contrary position when the results cease to be beneficial and claim that the act is no longer within the scope of the employment.

Except in plain and palpable cases, the question of whether a servant is acting within the scope of his employment is a jury question. *Broome* v. *Primrose Tapestry Mills*, 59 *Ga. App.* 70, 74 (200 S. E. 506). Grounds 2 and 3 of the amended motion for a new trial are therefore without merit.

■ Special ground 4 of the amended motion for a new trial contends that the trial court erred in charging the jury as follows: "On the other hand, if you find that the plaintiff invited him to come in and help him, and Perry Cooper did do that, and that was in line with his duties and within the scope of his employment for the benefit of the railroad company, then you might find negligence." This excerpt of the charge is contended to be error because, (a) "it permitted the jury to find that the mere act of being invited to help him and the response by the co-employee without more would be negligence on the part of the defendant," and because (b) "it invaded the province of the jury in instructing it that under certain circumstances it would consider that negligence had been proved and the charge amounted to the expression of an opinion that the facts recited could constitute negligence if the jury so found."

The paragraph of the charge from which this excerpt is taken is, as a whole, as follows: "In this connection, let me say that one of the acts of negligence alleged to have been committed was that this man, who is alleged to have turned on the switch,

whose name was Perry Cooper, who came into the house where the machine was located and, without the knowledge and consent of the other man, without looking to see whether or not he was in a place of danger, pulled the switch which threw the machine into operation; now, if you find that this man did not do that that way, that Perry Cooper did not do that, then you would not find any amount in damages against the railroad company; on the other hand, if you find that the plaintiff invited him to come in and help him and Perry Cooper did do that, and that was in line with his duties and within the scope of his employment, for the benefit of the railroad company, then you might find negligence." Construing the entire paragraph from which the excerpt complained of is taken, together with the whole charge, it is not subject to the criticism pointed out in this ground of the amended motion for a new trial. The charge should be construed as a whole. See many cases under Code (Ann.) § 70-207, catchword, "Part."

■ Special grounds 5 and 6 of the amended motion for a new trial complain in substance that the court charged that if the jury found that the plaintiff's wages had been reduced from $2400 per year to $910 per year as a result of his injury, and if there was liability, they might use that as a basis to figure the total liability of the defendant. He then stated, "Now, you do not figure that amount per year throughout the entire life expectancy, but you may consider in your good judgment what reasonable expectancy he might have, how long he might be able to work, and what he might be able to earn during that time; but you must reduce that to a present cash value." It is contended that this charge did not call to the jury's attention the fact that the plaintiff's earning capacity might also be reduced by declining years, ill health, uncertainties of steady employment, and other factors, and that it was therefore error. However, there was no request to charge more specifically on this subject. Under the charge as given the jury was instructed to consider how long the plaintiff might be able to work and what he might be able to earn during that time. Such charge clearly allowed the jury to consider the probable decrease in earning capacity, unemployment, and other factors in arriving at its verdict. In the absence of timely written request, the

failure to charge more fully on this subject was not error. See *Western & Atlantic Railroad* v. *Frazier*, 66 *Ga. App.* 275 (11) (18 S. E. 2d, 45), which also distinguishes those cases cited by counsel for the defendant: *Central of Ga. Ry. Co.* v. *Anderson*, 43 *Ga. App.* 189 (3) (158 S. E. 333); *Roberts* v. *McClellan*, 80 *Ga. App.* 199 (55 S. E. 2d, 736).

■ In our consideration of the general grounds, the evidence must be construed in its light most favorable to support the verdict. *Rice* v. *Ware*, 3 *Ga. App.* 573 (60 S. E. 301). Since the verdict was in favor of the plaintiff, the evidence therefore must be construed in its light most favorable to him. The only eyewitnesses who saw the plaintiff injured were the plaintiff himself and his fellow employee, Perry Cooper, whose act is alleged to have brought about the injury. In order for the plaintiff to be entitled to recover it is necessary that there be some evidence in support of two essential elements, viz., (1) that Perry Cooper at the time he committed the act resulting in the plaintiff's injury, was acting within the scope of his employment, and (2) that such act amounted to negligence which constituted at least a part of the proximate cause of the plaintiff's injury.

According to the undisputed evidence, the plaintiff was operating a pin grease machine in a building known as the oil house by the side of a door through which the oil house is entered; several feet away from this machine and behind this door when it is opened is a valve which cuts air into the machine; beside this valve there is another control in the form of a lever immediately over the head of the operator of the machine, which, when pulled down, causes the plunger of the machine to go down into the bowl where the grease is put to be pressed into long strips, provided the valve behind the door is open. According to the testimony it is also undisputed that while the plaintiff was thus engaged in the operation of the machine, Perry Cooper, a fellow employee, althouh employed by the defendant company to work in a different department from that of the plaintiff, came into the oil house and manipulated something connected with the machine, either the valve behind the door or the lever over the plaintiff's head, which caused the plunger to descend upon the plaintiff's hand, severing the entire hand except the thumb.

On the question of whether or not the fellow employee was acting within the scope of his employment, the jury was authorized to find from the much disputed evidence on this question that it was customary for the employees, even though working in different departments, to assist each other and that Perry Cooper had assisted the plaintiff on previous occasions, although never in the operation of the pin grease machine. The plaintiff himself testified in substance that without being requested to do so and without any knowledge on his part, Perry Cooper came to the machine and pulled the valve over his head; that he had his head down at the time this happened and did not see Perry Cooper until immediately after he was injured, and that Perry Cooper then said, "Look what I have done!" Cooper testified in substance that he was passing the door of the oil house on his way to perform some particular duty incident to his employment and that as he passed the door of the oil house the plaintiff called to him, asking him to come and assist him; that he replied that he did not have time then but did return shortly; that upon his return the plaintiff again called him; that in response to this second request he entered the oil house and inquired of the plaintiff what was wanted; that the plaintiff told him he wanted him to cut on the air; that Cooper inquired where it was to be cut on and was informed by the plaintiff that the valve was behind the door; that he went behind the door and turned the valve; that while he was doing this the plaintiff was not in his view, and that immediately after turning on the valve he heard the plaintiff cry out in agony. The testimony of the plaintiff and Perry Cooper is in hopeless conflict as to the particular manner in which the plaintiff was injured. However, the record discloses that Cooper had made a previous statement to the plaintiff's attorney and in the presence of the plaintiff which contradicted his testimony in some material respects. The testimony of a witness may be impeached by prior contradictory statements. See Code, § 38-1803. When thus impeached, the weight and credit to be given all or any part of the testimony of such witness is for the jury. See *Huff* v. *State*, 104 *Ga.* 521 (2) (30 S. E. 808). Also when thus impeached, the jury may believe part of the testimony and disbelieve other parts. *Brown* v. *O'Neal*, 59 *Ga. App.* 561 (1 S. E. 2d, 601). We

have already pointed out in division 1 (a) of this opinion that the true test as to the scope of employment is whether the purpose of the fellow servant in performing the act is to further the master's business, rather than whether or not it deviated in some degree from his normal conduct. The jury had a right to find from the testimony of Perry Cooper, assuming that they believed some of it, that at the time he committed the act which resulted in the plaintiff's injury he was seeking to further the business of the defendant company by whom he was employed. At the same time the jury was authorized to disbelieve the testimony of this witness as to the particular manner in which he testified he did it. From the testimony of the plaintiff the jury was authorized to find that it was customary for the employees of different departments to assist each other; that Perry Cooper had on previous occasions assisted him, although not in the operation of this machine; that this custom had the approval of the foremen of the different departments; that on this particular day he, the plaintiff, had some 15 minutes previous to his injury already turned the valve behind the door in order to determine the amount of pressure the machine was registering; that at the time of his injury Perry Cooper came into the oil house while he, the plaintiff, had his head down and his hand in the bowl of the grease machine, and pulled the lever over his head, resulting in the loss of his hand.

Although meager and unsatisfactory, there is at least some evidence which authorized the jury to find that the fellow employee, Perry Cooper, was acting within the scope of his employment, that his act was negligent, and that this negligence constituted at least a part of the proximate cause of the plaintiff's injury. It follows that the evidence authorized the verdict and that the trial court did not err in overruling the motion for a new trial on the general grounds.

The judgment of the trial court overruling the motion for a new trial as amended is without error for any of the reasons assigned.

*Judgment affirmed. MacIntyre, P.J., and Gardner, J., concur.*