## A10A1699. CITY OF ATLANTA et al. v. HARBOR GROVE APARTMENTS, LLC.

(706 SE2d 722)

MILLER, Presiding Judge.

On October 11, 2007, Harbor Grove, LLC ("Harbor Grove"), filed the underlying verified petition for declaratory judgment and mandamus against the City of Atlanta and Robert J. Hunter, in his capacity as Commissioner of the Department of Watershed Management of the City of Atlanta Bureau of Drinking Water (collectively the "City"). Harbor Grove alleged that Commissioner Hunter and the City improperly and illegally conditioned the sale of a water meter on a requirement that Harbor Grove extend the water main across the frontage of its property, a property beyond the City's limits, although the water main had previously been extended to bring water there. Harbor Grove subsequently amended its petition to assert a claim for monetary damages. On cross-motions for summary judgment, Harbor Grove sought partial summary judgment against Commissioner Hunter and against the City alleging liability for damages arising out of the foregoing official act undertaken by Commissioner Hunter. Harbor Grove further alleged that Commissioner Hunter was personally liable under OCGA § 36-33-4 and that the City was vicariously liable on the theory that Commissioner Hunter acted as the City's agent. For its part, the City sought summary judgment against Harbor Grove, arguing that Commissioner Hunter could not be held liable individually since he was sued in his official capacity and that the City was not vicariously liable for his acts. The trial court granted Harbor Grove's motion, finding that Commissioner Hunter acted without legal authority which rendered him personally liable for its damages under OCGA § 36-33-4. Contemporaneously, the trial court denied the City's motion for summary judgment.

The City appeals with respect to the grant of partial summary judgment for Harbor Grove only, contending that the trial court erred in finding Commissioner Hunter personally liable because he was not sued in his personal capacity. Alternatively, the City claims that the trial court erred in ruling that Harbor Grove established personal liability in Commissioner Hunter under OCGA § 36-33-4 as a matter of law and that it is not vicariously liable for Commissioner Hunter's alleged violation of OCGA § 36-33-4. For the reasons that follow, we affirm in part and reverse in part.

"[O]n appeal of a grant of summary judgment, the appellate court must determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. This requires a de novo review of the evidence." (Citations and punctuation omitted.) *Rubin*

*v. Cello Corp.*, 235 Ga. App. 250, 250-251 (510 SE2d 541) (1998).

1. The City challenges partial summary judgment for Harbor Grove as to liability for damages, contending that the trial court erred in finding Commissioner Hunter personally liable under OCGA § 36-33-4 because he was not sued in his personal capacity. We agree.

It is clear from the record that Harbor Grove's initial action, styled as a Verified Petition for Declaratory Judgment and Mandamus, was filed against the City and Commissioner Hunter in his official capacity. Harbor Grove's Amended Verified Petition and Second Amended Complaint likewise named the City and Commissioner Hunter in his official capacity as defendants. That Commissioner Hunter was sued in his official capacity is asserted in the body of each of Harbor Grove's filings. It was in Harbor Grove's Second Amended Complaint that Harbor Grove added its claim for damages under OCGA § 36-33-4, this also predicated upon alleged official action taken by Commissioner Hunter. Further, the record reveals that Harbor Grove served the City and the City of Atlanta Bureau of Drinking Water. There is no evidence of service upon any individual or of attempts to serve any individual in an individual capacity in the record. Even were it otherwise, Harbor Grove has neither alleged nor presented any evidence of a waiver of immunity as to the claimed official actions of Commissioner Hunter. See OCGA § 36-33-4 ("[O]fficers of a municipal corporation shall be personally liable to one who sustains special damages as the result of any official act of such officers if done oppressively, maliciously, corruptly, or without authority of law."). Notwithstanding the provisions of OCGA § 36-33-4, Commissioner Hunter cannot be held personally liable in this case because he was not sued in his individual capacity.

"[A] suit against a public employee in his or her official capacity is in reality a suit against the state." (Citation omitted.) *Ward v. Dodson*, 256 Ga. App. 660, 662 (569 SE2d 554) (2002); see also *Colvin v. McDougall*, 62 F3d 1316, 1317 (11th Cir. 1995) (In determining the capacity in which a defendant is sued, courts should look to "the complaint and the course of proceedings."). Given the pleadings of record, as above, we conclude that Commissioner Hunter was sued in his official capacity alone. "[T]he difference between an official capacity suit and an individual capacity suit is a big difference. And, in general, plaintiffs have a duty to make plain who they are suing and to do so well before trial." (Citation omitted.) Id. at 1318. This Harbor Grove failed to do. Accordingly, the trial court erred in granting partial summary judgment to Harbor Grove against Commissioner Hunter individually. *Rubin*, supra, 235 Ga. App. at 250.

2. The City also contends that the trial court erred in finding it vicariously liable for Commissioner Hunter's alleged violation of

OCGA § 36-33-4. Citing provisions of the Atlanta City Code,[1] the City argues by its appellate brief that "[t]he Atlanta City Council has delegated the management, administration and responsibility for the drinking water system, within and outside the territorial boundaries of the City of Atlanta to the Commissioner of the Department of Watershed Management" (the "Department"); that Commissioner Hunter was authorized to create rules and regulations to carry out his job responsibilities; and that such responsibilities included the frontage extension requirement at issue. Below the City also argued that "[m]erely because [the Department's] policy was unwritten does not eviscerate [his] clear authority to have such a policy." We are not persuaded.

As noted above, OCGA § 36-33-4 provides for personal liability of municipal officers for special damages sustained in consequence of any official act of such officers if done, among other things, without authority of law. In light of our disposition of Division 1, supra, personal liability in Commissioner Hunter is no longer at issue in this case. And because the City concedes that Commissioner Hunter acted officially by conditioning the sale of a water meter to Harbor Grove upon requiring Harbor Grove to extend its water main, as above, it remains to be determined whether he did so legally, and, if not, whether his employer, the City, is vicariously liable for the same.

"[T]o hold a chartered city liable for the negligent act of its servant or agent, the act complained of must be both within the corporate powers of the municipality and within the scope of employment of the servant or agent." (Citation omitted.) *Newton v. City of Moultrie*, 39 Ga. App. 702, 703 (148 SE 299) (1929). Further, it is well settled that by operating a waterworks, the City is engaged in a private nongovernmental business (see *Rutherford v. DeKalb County*, 287 Ga. App. 366, 368 (1) (a) (651 SE2d 771) (2007)), and as

---

[1] See, e.g., City Code §§ 154-53 and 154-65. City Code § 154-53 provides:

To assist in the successful performance of the functions and services enumerated in this article, there shall also be established a set of rules and regulations. The commissioner of the department of watershed management shall, subject to the direction and supervision of the mayor, be responsible for administering and directing the affairs and operations of the department of watershed management and shall be responsible for the establishment of such rules and regulations as the commissioner of the department of watershed management deems necessary to successfully perform operations and responsibilities of the department of watershed management.

City Code § 154-65 provides:

The water system may be extended beyond the territorial boundaries of the city pursuant to such terms as the mayor, with the approval of council, may establish. The commissioner of the department of watershed management shall be responsible for the administration and direction of that part of the city water system lying outside the territorial boundaries of the city and shall prepare rules and regulations necessary for the efficient and successful operation.

such is liable to one injured as a result of the negligence of its employees acting in the scope of their employment, the city charter to the contrary notwithstanding. *City of Rome v. Justice*, 40 Ga. App. 196, 198 (149 SE 88) (1929).

Inasmuch as the "frontage extension" policy implemented by Commissioner Hunter was unwritten, it plainly was not in the nature of an ordinance setting out guidelines for consideration with sufficient specificity to give citizens notice of what was expected. See *City of Hawkinsville v. Wilson & Wilson, Inc.*, 231 Ga. 110, 111 (2) (200 SE2d 262) (1973) (Cities may place conditions on the operation of a business enterprise in the exercise of their police powers, but to be valid, such conditions must be based on an ordinance "written with sufficient specificity to apprise all parties concerning the . . . required conditions" and the conditions "would have to apply uniformly to all persons and firms concerned."); see also *City of Buford v. Ward*, 212 Ga. App. 752, 754 (1) (443 SE2d 279) (1994). Here, Commissioner Hunter acted officially upon implementing an unwritten policy while having the authority to make the applicable rules. Consequently, it is clear that Commissioner Hunter exercised unfettered discretion in conditioning the sale of a water meter to Harbor Grove as he did contrary to law.

"Georgia courts will hold an employer responsible for the conduct of its employee if the employee acted in the course of the employer's business and with a desire to benefit the employer." (Citation omitted.) *Bennett v. United States*, 102 F3d 486, 489 (III) (11th Cir. 1996) (applying Georgia law). The tort of an employee is within the scope of his employment if it is done in furtherance of the employer's business. See, e.g., *Atlantic &c. R. Co. v. Heyward*, 82 Ga. App. 337, 339 (1) (a) (60 SE2d 641) (1950). Although undertaken without proper authority, as above, the implementation and enforcement of the frontage extension policy regarding the sale of water meters was clearly within the scope of Commissioner Hunter's employment. Accordingly, the trial court did not err in ruling that because "the administration of the Department . . . , including the sale of water meters, was within the scope of Commissioner Hunter's employment[,] . . . the City may be held vicariously liable for his actions taken without authority of law."

3. In light of our disposition of Division 1, supra, we need not consider the City's claim that the trial court erred in concluding that Harbor Grove established personal liability against Commissioner Hunter as a matter of law.

*Judgment affirmed in part and reversed in part. Phipps, P. J., and McFadden, J., concur.*

DECIDED FEBRUARY 23, 2011.

*Laura Sauriol-Gibris*, for appellants.
*Smith, Currie & Hancock, Robert O. Fleming, Jr., Philip E. Beck*, for appellee.