297 Ga. 321
FINAL COPY

S15A0117.  LUE v. EADY et al.

BENHAM, Justice.

This case involves a highly contentious dispute over certain official actions of Mary Ann Whipple Lue, Mayor of the City of Gordon, who is the appellant in this case.  Mayor Lue was the first African-American to be elected mayor of this city, and she was sworn into office on January 6, 2014.  Barely two months later, two members of the city council and five other citizens filed a complaint against Mayor Lue in her official capacity, which was later amended, seeking removal of Mayor Lue for various actions alleged to be examples of conduct demonstrating incompetence, misfeasance, and malfeasance in office, which, according to the complaint, provide grounds for removal from office pursuant to the City of Gordon Charter.  According to the complaint, these actions fell into three categories: alleged violations of the Georgia Open Meetings Act, OCGA § 50-14-1 et seq. ("Act"); alleged violations of the city charter ("Charter"),[1] city code, and city personnel policy;

---

[1]  The City Charter of the City of Gordon is codified at Ga. L. 1988, p. 4375.

and alleged financial malfeasance. One of the methods for removing an elected official, as set forth in the Charter, is by order of the Superior Court of Wilkinson County after a hearing on a complaint filed by any resident of the city. In addition to removal from office, the complaint sought the award of attorney fees and fines, pursuant to OCGA §§ 50-14-5 (b) and 50-14-6.

The trial court denied Mayor Lue's motions to dismiss the complaint. Shortly thereafter, the trial court granted the motion for a temporary restraining order filed by plaintiffs (who are appellees in this appeal), pursuant to which the mayor was temporarily suspended from office until such time as a hearing could be held on plaintiffs' motion for interlocutory injunction. Mayor Lue filed a motion to recuse the trial court judge, alleging improper ex parte communications between the judge and plaintiffs' counsel with respect to the temporary restraining order hearing, and that motion was denied. After a hearing on plaintiffs' motion for interlocutory injunction, the trial court granted the motion and entered an order, which was later amended, by which Mayor Lue was reinstated to office, subject to certain conditions imposed on her, including a prohibition from her meeting privately with three or more council members to discuss city business and a requirement that any such meetings must be open to

2

the public with notice provided to the public as required by law. Mayor Lue appeals the denial of her motions to dismiss, the denial of her motion to recuse the trial court judge, and certain terms of the interlocutory injunction order and amended order. For the reasons set forth herein we affirm in part and reverse in part.

1. We first address Mayor Lue's assertion that the trial court judge erred in denying her motion to recuse himself as the sitting judge in the case. The motion was based upon two occurrences: First, Mayor Lue asserts the judge engaged in improper ex parte communications with opposing counsel with respect to scheduling the hearing on plaintiffs' motion for a temporary restraining order; second, Mayor Lue asserts the judge improperly failed to respond to her counsel's letter requesting either that the judge recuse or that he provide counsel with information relating to how the request for a hearing was made and scheduled. Mayor Lue alleged in the motion to recuse that the trial judge's conduct required disqualification pursuant to Canon 3 (E) (1) of the Georgia Code of Judicial Conduct,[2] which provides: "Judges shall disqualify

_____

[2] The version of the Georgia Code of Judicial Conduct applicable to the motion for disqualification in this case was revised by order of the Supreme Court dated May 14, 2015, to take effect January 1, 2016. The relevant portion of Canon 3 (E) (1) has not changed and can be found

themselves in any proceeding in which their impartiality might reasonably be questioned . . . ." The record reflects that plaintiffs' counsel telephoned the judge's secretary to request a date for the TRO hearing and, given the judge's availability, it was scheduled for 3:00 p.m. on the date the request was made. Mayor Lue's counsel acknowledged in his motion that he received notice of the scheduled hearing from a lawyer in plaintiffs' counsel's office by telephone call received at 1:38 p.m. on the day of the hearing. In the order denying the motion to recuse, the court noted that the affidavit supporting the motion was silent as to any effort made by Mayor Lue's counsel to seek a delay in the hearing, either by request to plaintiffs' counsel or to the court. The order further shows it was entered after taking into consideration the standards for disqualification set forth in Canon 3 (E) and Uniform Superior Court Rule 25.3.[3]

---

at Canon 2, Rule 2.11 (A) of the new Code.

[3] Rule 25. 3 states:

> When a judge is presented with a motion to recuse, or disqualify, accompanied by an affidavit, the judge shall temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted. If it is found that the motion is timely, the affidavit sufficient and that recusal would be authorized if some or all of the facts set forth in the affidavit are true, another judge shall be assigned to hear the motion to recuse. The allegations of the motion shall stand denied automatically. The trial judge shall not otherwise oppose the motion. In reviewing a motion to recuse, the judge shall be guided by Canon 3 (E) of the

Having reviewed the record, we find no error in the trial court's denial of the motion to recuse. The practice of communicating ex parte to a judge or the judge's staff for administrative and scheduling purposes is authorized as an exception to the rule prohibiting ex parte communications with a judge, as noted in the trial court order. Canon 3 (B) (7) (a) expressly authorizes such communications so long as:

> (i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
> (ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.[4]

With respect to the scheduling of hearings, we do not construe this Canon to require the judge to notify the opposing party personally so long as, as here, the party requesting the hearing provided adequate reasonable notice. The manner in which the hearing in question in this case was scheduled does not require the disqualification of the trial judge because it does not present a situation in which the judge's "impartiality might reasonably be questioned." Nor does the trial

---

Georgia Code of Judicial Conduct.

[4] In the revised version of the Code of Judicial Conduct, this authorization is discussed in Rule 2.9 (A) (1) (a) and (b).

judge's alleged refusal to respond to counsel's letter demanding either voluntary recusal or an explanation of the manner in which the request for hearing was handled. The motion to recuse was duly considered and ruled upon based upon the motion and affidavit in support of the motion.

2. Next, we address those terms of the interlocutory injunction order challenged by Mayor Lue. She argues that the objectionable portions of the order are based upon a misinterpretation of the Charter provisions relating to what constitutes a quorum of the city council for purposes of transacting city business, the circumstances pursuant to which the mayor may vote on issues of city business, as well as other portions of the Charter. As set forth herein, we agree that the trial court misinterpreted the Charter and reverse the noted portions of the interlocutory injunction order.

The Open Meetings Act requires all meetings, as that term is defined in the Act, of certain public agencies to be open to the public. OCGA § 50-14-1 (b) (1). The parties to this case do not dispute that the City of Gordon is an "agency" as that term is defined in the Act (see OCGA § 50-14-1 (a) (1) (D)) and that the city council is its governing body. "Meeting" is defined at OCGA § 50-14-1 (a) (3) (A) as:

6

(i)   The gathering of a quorum of the members of the governing body of an agency at which any official business, policy, or public matter of the agency is formulated, presented, discussed, or voted upon;  or

(ii) The gathering of a quorum of any committee of the members of the governing body of an agency or a quorum of any committee created by the governing body at which any official business, policy, or public matter of the committee is formulated, presented, discussed, or voted upon.

To evaluate the trial court's rulings on what constitutes a quorum of the city council for voting and conducting official business, it is first necessary to examine the relevant sections of the Charter.

The Charter as a whole provides that three distinct entities are involved in city governance — the mayor, the council (as a whole), and "councilmembers," as that term is used in the Charter.  The Charter, in Section 2.10 labeled "City council creation; composition; number; election," provides that the legislative authority of city government is vested in a city council to be composed of six councilmembers and a mayor.  Throughout the Charter, the term "mayor" and the term "councilmember[s]" are referred to as distinct officers with distinct powers and duties.  Pursuant to Section 3.15, labeled "Voting," the Charter stipulates that "four councilmembers" shall constitute a quorum authorized to transact city council business and, "[e]xcept as otherwise

7

provided in this charter," requires the affirmative vote of "four councilmembers" for adoption of any ordinance, resolution, or motion. The powers and duties of the mayor are set forth in Section 3.22, one enumeration of which is to preside over all city council meetings. Subsection (8) of Section 3.22 authorizes the mayor to participate in the council's discussions of all matters brought before the city council, but limits the mayor's authority to vote on such matters to only two instances: (1) when there is a tie vote, and (2) in all elections of officers who are elected by the city council, as well as impeachment or removal proceedings, whether or not there is a tie vote. With respect to officers elected by the city council, the Charter provides in Section 3.11 (b) that the city council shall elect, by majority vote, a councilmember to serve as mayor pro tempore and a councilmember to serve as presiding officer. Section 4.12 of the Charter provides that a city attorney shall be appointed by the city council and shall serve at the pleasure of the city council.

(a) The first provision of the interlocutory injunction order challenged by Mayor Lue is the prohibition against her meeting privately with three or more councilmembers to discuss city business. The order states:

> **Four or more members** of the city council **shall not meet**

**privately** to discuss city business. This includes occasions where at least 3 councilmembers and the mayor are present. This applies at all times and to all places, it does not matter whether the meeting is in city hall, a private home, a vehicle, a restaurant, or any other location.

(Emphasis in original.) The order reinstates Mayor Lue to her position as mayor subject to certain conditions. These conditions include the following:

The **Mayor is enjoined** from privately meeting with three or more councilmembers to discuss city business. All such meetings must be open to the public, and notice of such meetings should be provided as required by state law.

(Emphasis in original.)

It is obvious from these sections of the order that they are based upon the trial court's assumption that a quorum is created by three councilmembers plus the mayor. But the language of the Charter, as noted above, specifically defines a quorum as consisting of "four councilmembers," and it makes a distinction between councilmembers and the mayor. Appellees argue that such a reading of the Charter renders meaningless that section of the Charter permitting the mayor to vote in the case of a tie, given that the Charter also requires the affirmative vote of four councilmembers to pass any ordinance, resolution, or motion. According to the appellees, if the mayor is considered a

9

"councilmember" for purposes of providing the necessary fourth vote to break a tie, then the mayor must also be considered a "councilmember" for purposes of creating a quorum for a meeting to transact city council business.

The interpretation of statutes, ordinances, and charters presents a question of law for the court. *Merry v. Williams*, 281 Ga. 571, 573 (2) (642 SE2d 46) (2007); *Monticello, Ltd. v. City of Atlanta*, 231 Ga. App. 382, 383 (1) (499 SE2d 157) (1998). It is true, as appellees argue, that under the rules governing statutory construction, "statutes 'in pari materia,' i.e., statutes relating to the same subject matter, must be construed together." *Willis v. City of Atlanta*, 285 Ga. 775, 776 (2) (684 SE2d 271) (2009) (quoting *Butterworth v. Butterworth*, 227 Ga. 301, 303-304 (180 SE2d 549) (1971)). We do not agree, however, that the Charter section granting the mayor the authority to vote in the case of a tie vote of councilmembers means the Charter must be construed as granting the mayor the status of a councilmember for purposes of creating a quorum. The Charter specifically states that "four councilmembers" constitutes a quorum for transacting city council business and it also specifically provides the limited circumstances under which the mayor can vote. That being the case, a meeting of three councilmembers plus the mayor does not constitute a quorum of the city

10

council and is not a meeting that is subject to the Open Meetings Act. The only reasonable construction of the Charter provisions on voting is that the mayor does not become a councilmember for purposes of voting when called upon to break a tie vote; the mayor votes as mayor, a non-councilmember, who is authorized by the Charter to cast a tie-breaking vote of the councilmembers. See *Palmer v. Claxton*, 206 Ga. 860, 863 (2) (59 SE2d 379) (1950). Indeed, the sentence requiring the affirmative vote of "four councilmembers" to adopt any ordinance, resolution, or motion opens with the proviso, "[e]xcept as otherwise provided in this chapter," and the Charter specifically provides otherwise in Section 3.22 (8) which authorizes the mayor to vote in the case of a "tie vote."

In deciding whether to grant an interlocutory injunction, trial courts are to consider whether:

> (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) there is a substantial likelihood that the moving party will prevail on the merits of [the] claims at trial, and (4) granting the interlocutory injunction will not disserve the public interest.

(Citation omitted.) *SRB Investment Svcs., LLLP v. Branch Banking and Trust Co.*, 289 Ga. 1, 5 (3) (709 SE2d 267) (2011). In *SRB Investment Svcs.*, this

11

Court noted that the moving party need not prove all four factors. Id. The trial court's broad discretion to grant or deny an interlocutory injunction, however, will not be reversed "unless the trial court made an error of law that contributed to the decision, there was no evidence on an element essential to relief, or the court manifestly abused its discretion." (Citation and punctuation omitted.) Id.

To the extent that the trial court order enjoins the mayor from meeting privately with three city council members, it appears that the trial court's grant of the injunction with respect to the mayor's participation in such meetings is based upon an erroneous interpretation of the Charter.[5] That being the case, the first of the four factors a trial judge is to consider when deciding upon a motion for interlocutory injunction is not met in this case — the moving parties will not suffer irreparable harm by denial of the motion because the applicable law does not grant them the right to demand or expect that such meetings will be noticed and open to the public. A trial court's discretion to decide whether to grant an interlocutory injunction is abused, and may be reversed, when it is based on a

_____

[5] The injunction prohibits the mayor from meeting privately with three or more city council members. As discussed above, it is permissible for the mayor to meet privately with three city council members. However, a meeting with four would consitute a quorum and violate the Open Meetings Act law if done in private.

misunderstanding or misapplication of the governing law, or in this case, city charter. See *Owens v. Hill*, 295 Ga. 302, 309 (4) (758 SE2d 794) (2014). Accordingly, we reverse that section of the interlocutory injunction order requiring compliance with the Open Meetings Act for meetings including Mayor Lue that do not involve a quorum of four councilmembers.

(b) As set forth in Section 3.22 (8), the Charter authorizes the mayor to vote on city council business only in the event of a tie vote and also in elections of officers who are elected by the city council and impeachment or removal proceedings, whether or not the vote is tied. Another section of the interlocutory injunction order challenged by Mayor Lue states that the mayor's authority to vote with respect to decisions on elected officers does not include the city attorney or city employees. Specifically, the order states:

> The **Mayor can only vote** when there is a three to three tie. The only exception is with regard to elected officers, which does not include the city attorney or city employees. If the Mayor believes there is a matter on which she could otherwise vote, she may petition this Court for guidance.

(Emphasis in original.)

Strictly speaking, this section of the interlocutory order correctly applies the terms of the Charter with respect to the mayor's authority to vote on matters

13

before the city council, and the trial court did not err in entering it. According to the terms of the Charter, neither the city attorney nor city employees are elected officers. Pursuant to Section 4.12, the city attorney is to be *appointed* by the city council and serve at the pleasure of the city council, and it is the city council which decides upon the city attorney's compensation.[6] Pursuant to Section 3.22 (2), the mayor has authority to "[a]ppoint and remove for cause, with confirmation of appointment or removal by the council, all . . . employees of the city . . . ." City employees are appointed by the mayor and are not elected officers, and therefore the challenged provision of the interlocutory injunction order does not violate the terms of the Charter.[7]

(c) The final section of the interlocutory injunction order to which Mayor Lue objects states as follows:

---

[6] As with any matter set forth in the Charter on which the city council makes the determination, in the event of a tie vote, and assuming a quorum of four councilmembers, the mayor may cast the tie-breaking vote for appointment of the city attorney. The record reflects a dispute exists with respect to employment of the city attorney. If any decisions have been made to date regarding the city attorney that do not comply with the terms of the Charter, the proper remedy is to seek a trial court ruling that the specific action in question is ultra vires and beyond the scope of authority of the person or entity that took the challenged action as defined by the municipal code or charter. See, e.g., *City of Ludowici v. Brown*, 249 Ga. 857 (295 SE2d 90) (1982).

[7] To the extent that this provision of the interlocutory order may be interpreted as placing a restriction on the mayor's authority to appoint city employees in the manner set forth in the Charter, however, that interpretation would be contrary to the express provisions of the Charter.

The **Mayor is enjoined** from terminating any city employee without full due process as is provided by the city charter, state and federal law, and the approval of this court after the opportunity for a hearing.

(Emphasis in original.) "Injunction ought not to be granted unless the injury is pressing and the delay dangerous, and there is no adequate remedy at law." (Citation and punctuation omitted.) *Cathcart Van and Storage Co. v. City of Atlanta*, 169 Ga. 791 (151 SE 489) (1930). Where there is an adequate remedy at law, a temporary injunction sought by the petitioner is properly refused. *East v. Henry Darling, Inc.*, 163 Ga. 760 (136 SE 895) (1927). No allegation is made that Mayor Lue has improperly terminated or threatened to terminate any city employee, although the record reflects appellees are concerned that she may have plans to do so. "Courts of equity will not exercise [the power of injunctive relief] to allay mere apprehensions of injury, but only where the injury is imminent and irreparable and there is no adequate remedy at law." (Citation and punctuation omitted.) *Morton v. Gardner*, 242 Ga. 852, 856 (252 SE2d 413) (1979). This section of the interlocutory injunction order is, therefore, reversed.

3. Mayor Lue filed two motions to dismiss the complaint on the ground that it failed to state a claim upon which relief can be granted. In the earlier-

15

filed motion, Mayor Lue asserted she is immune from plaintiffs' claims for damages for alleged non-compliance with the Open Meetings Act by virtue of the doctrine of sovereign immunity and by the doctrine of official or qualified immunity. She also asserted that plaintiffs failed to state a claim against her because she, as an individual elected official, is not an "agency" pursuant to the Open Meetings Act and thus is not a proper party to a complaint for damages under the Act. Finally, Mayor Lue asserted that even if the plaintiffs were to prove a violation of the Open Meetings Act, they are not entitled to enforce civil penalties against her pursuant to OCGA § 50-14-6. In the second-filed motion, Mayor Lue asserted she, in her capacity as mayor, is not a party capable of being sued. After these motions were filed, plaintiffs amended their complaint to make additional claims of violations of the Open Meetings Act, as well as other acts which, according to plaintiffs, create grounds for removal from office. The trial court denied both motions to dismiss, and Mayor Lue appeals. On appeal, Mayor Lue argues that the trial court's decision on her motions to dismiss should be reversed because: (a) in her capacity as mayor, as she is named in the complaint, she is not an entity or person capable of being sued; (b) she is not an agency that may be sued under the Open Meetings Act; and (c) in her

16

capacity as mayor, she is not a proper party to the claim for award of attorney fees. We also address whether the trial court properly denied the motion to dismiss with respect to the plaintiffs' petition to nullify certain city council decisions and with respect to the petition to remove the mayor.

(a) We reject Mayor Lue's assertion that the complaint should be dismissed in its entirety because the named defendant, "Mary Ann Whipple Lue, as Mayor of the City of Gordon," is neither a natural person nor an entity capable of being sued. Being named as a defendant in a lawsuit in an official capacity, rather than an individual capacity, does not mean the person so named is an entity incapable of being sued.[8] In fact, the Civil Practice Act recognizes that a public officer may sue or be sued in his or her official capacity. See OCGA § 9-11-25 (d) (2) (permitting a public officer named in an action in his or her official capacity to be described as a party by official title rather than by name, unless the trial court requires his or her name to be added). This Court has stated that a suit filed against a county employee in his official capacity is,

---

[8] It is not uncommon for the mayor of a city to be sued in his or her official capacity. See, e.g., *Owens v. City of Greenville*, 290 Ga. 557 (722 SE2d 755) (2012); *City of Atlanta v. Southern States Police Benevolent Assn. of Georgia*, 276 Ga. App. 446, 447, n. 1 (623 SE2d 557) (2005); *City of Roswell v. Bolton*, 271 Ga. App. 1 (608 SE2d 659) (2004).

in essence, a claim against the county. See *Gilbert v. Richardson*, 264 Ga. 744, 746 (2), n. 4 (452 SE2d 476) (1994); see also *City of Atlanta v. Harbor Grove Apartments, LLC*, 308 Ga. App. 57, 58 (1) (706 SE2d 722) (2011). Likewise, we conclude here that plaintiffs' claim against Lue, in her official capacity as mayor is, in essence, a claim against the City of Gordon, which is a legal entity incorporated by the General Assembly[9] and capable of being sued.

(b) Mayor Lue argues that the Open Meetings Act, by its terms, applies only to an "agency," as defined by the Act. Pursuant to OCGA § 50-14-1 (a) (1), a municipal corporation, every department or similar body of the municipal corporation, and every city is an agency subject to the terms of the Act.[10] Accordingly, Mayor Lue argues she is not an agency subject to the Open Meetings Act. As is obvious from the caption of the complaint, as well as the

---

[9] See Section 1.10 of the City Charter of the City of Gordon, supra.

[10] In pertinent part, OCGA § 50-14-1 (a) states that, as used in the Open Meetings Act:
(1) "Agency" means:
. . .
(B) Every county, municipal corporation, school district, or other political subdivision of this state;
(C) Every department, agency, board, bureau, office, commission, authority, or similar body of each such county, municipal corporation, or other political subdivision of this state; [and]
(D) Every city, county, regional, or other authority established pursuant to the laws of this state; . . .

18

party named in the summons, Lue was sued in her official capacity as mayor, and she is the sole party named as defendant. Mayor Lue asserts she, alone, is not the proper defendant to this action alleging violations of the Open Meetings Act and seeking to enforce damages for violation of the Act.

It is true that, in general, the Open Meetings Act addresses the obligations of agencies, as defined by the Act, and not specific individuals or governmental officers. That section of the Act that imposes penalties, however, refers to "any person" who violates the requirements of the Act. OCGA § 50-14-6 states as follows:

> Any person knowingly and willfully conducting or participating in a meeting in violation of this chapter shall be guilty of a misdemeanor and upon conviction shall be punished by a fine not to exceed $1,000.00. Alternatively, a civil penalty may be imposed by the court in any civil action brought pursuant to this chapter against any person who negligently violates the terms of this chapter in an amount not to exceed $1,000.00 for the first violation. A civil penalty or criminal fine not to exceed $2,500.00 per violation may be imposed for each additional violation that the violator commits within a 12 month period from the date that the first penalty or fine was imposed. It shall be a defense to any criminal action under this Code section that a person has acted in good faith in his or her actions.

Prior to its amendment in 2012, this Code section provided only for

misdemeanor criminal penalties for violation of the Act.[11] This precluded private citizens from seeking to impose a penalty for noncompliance with the Act since they lack standing to initiate a criminal prosecution. See *Cardinale v. City of Atlanta*, 290 Ga. 521, 526 (722 SE2d 732) (2012) (affirming dismissal of that portion of a complaint against a municipality and individual members of the city council seeking to impose misdemeanor penalties for alleged violations of the Open Meetings Act, but reversing dismissal of that portion of the complaint seeking declaratory and injunctive relief for alleged violations). Shortly after this Court issued its opinion in the *Cardinale* case, the General Assembly amended OCGA § 50-14-6 to provide, in addition to a criminal penalty for knowing and willful violation of the Act, for the imposition of a civil penalty "in any civil action . . . against any person who negligently violates the terms of this chapter . . . ."[12]

In construing a statute, this court applies

---

[11] See Ga. L. 1988, p. 235, § 1.

[12] Ga. L. 2012, p. 218, § 1/HB 397. In the same House Bill, a similar provision was enacted providing for recovery of civil penalties against "any person or entity" who negligently violates the terms of the Open Records Act, OCGA § 50-18-70 et seq. Ga. L. 2012, p. 218, § 2/HB 397.

fundamental rules of statutory construction [that] require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to look diligently for the intention of the General Assembly. OCGA § 1-3-1 (a); [Cit.]. Where the plain language of a statute is clear and susceptible of only one reasonable construction, we must construe the statute according to its terms.

*Atlanta Independent School System v. Atlanta Neighborhood Charter School, Inc.*, 293 Ga. 629, 631 (748 SE2d 884) (2013). Although the open meetings requirements of the Act apply to agencies, the natural and reasonable reading of OCGA § 50-14-6 is that the General Assembly recognized that decisions to comply, or not, with the Act are made by individuals, or "persons," who are held accountable by the provisions of that Code section.[13] The complaint in this case, however, does not name Mayor Lue in her individual, personal capacity; instead, she was sued in her official capacity as mayor. Accordingly, that portion of the complaint seeking to enforce a civil penalty "against any person who negligently violates the terms of this chapter," pursuant to OCGA § 50-14-

---

[13] See also OCGA § 50-14-1 (e) (2) (B) (requiring minutes to include the identity of "persons" making motions and voting); OCGA § 50-14-4 (b) (stating that if a meeting is closed to the public, the "person" presiding must execute an affidavit, and if one or more "persons" in an executive session speaks out of turn, the presiding officer must take certain steps); OCGA § 50-14-5 (c) (providing immunity for any "agency or person" who provides access to information in good faith).

21

6 fails to name a proper party defendant and should be dismissed.[14]

(c) The complaint also seeks an award of attorney fees, pursuant to OCGA § 50-14-5 (b), for alleged violations of the Open Meetings Act. Unlike OCGA § 50-14-6, which provides for the imposition of civil and criminal penalties against a person who violates the Open Meetings Act, OCGA § 50-14-5 (b) does not refer to a person who has violated the Act. Instead, it refers only to an action brought to enforce the Act in which the trial court determines that "an agency" has acted without substantial justification in violation of the Act. Those cases in which an award of attorney fees pursuant to this Code section has been affirmed involve complaints filed against the governmental agency that was subject to the Open Meetings Act, along with individual office holders. See, e.g., *City of Statesboro v. Dabbs*, 289 Ga. 669 (2) (715 SE2d 73) (2011); *Slaughter v. Brown*, 269 Ga. App. 211 (603 SE2d 706) (2004); *Evans County Bd. of Commrs. v. Claxton Enterprise*, 255 Ga. App. 656 (566 SE2d 399) (2002). This is appropriate because the clear and unambiguous language of

---

[14] We therefore need not decide in this case whether private citizens may enforce the new civil penalty provision and/or collect any civil penalty paid, or if, as in the case of the criminal penalty provision, only the Attorney General has standing to collect the criminal penalty on behalf of the State, which receives any fine paid.

22

OCGA § 50-14-5 (b) refers to an agency and not a person. For the reasons set forth above, we conclude that plaintiffs' claim against Lue, in her capacity as mayor, for an award of attorney fees pursuant to OCGA § 15-14-5 (b) is, in essence, a claim against the City of Gordon, which is an agency pursuant to the Open MeetingsAct. Consequently, this claim was not subject to dismissal on the ground that Lue, in her capacity as mayor, is not a proper party to the claim, and the trial court did not err in denying Mayor Lue's motion to dismiss this portion of the claim.

(d) The complaint seeks injunctive relief to nullify certain city council decisions because they were allegedly made at meetings that were not noticed or otherwise not conducted in compliance with the requirements of the Open Meetings Act. Injunctive relief, however, does not provide a remedy for acts already completed. See, e.g., *Moorhead v. Luther*, 219 Ga. 242 (2) (a) (132 SE2d 669) (1963); *Wiggins v. Bd. of Commrs. of Tift County*, 258 Ga. App. 666, 668 (574 SE2d 874) (2002) (in a case alleging violations of the Open Meetings Act, where it appears that the acts complained of were fully consummated, an injunction does not lie). Additionally, an injunctive remedy does not lie where

23

one has a complete remedy at law. *Lawrence v. Lawrence*, 196 Ga. 204 (1) (a) (26 SE2d 283) (1943); see also *Tobin v. Cobb County Bd. of Ed.*, 278 Ga. 663 (2) (604 SE2d 161) (2004) (where the Open Records Act provides an adequate remedy at law, neither mandamus nor equitable relief can be granted). The Open Meetings Act provides a legal remedy for invalidating any official action of an agency made in violation of the Act. OCGA § 50-14-1 (b) (2). Consequently, the trial court erred in denying Mayor Lue's motion to dismiss that portion of the complaint seeking to nullify certain city council decisions on the ground they were made in violation of the Open Meetings Act.

(e) The only other equitable relief sought in plaintiffs' complaint is Mayor Lue's removal from office. The Charter provides the manner in which a mayor may be removed from office, including an order of the Wilkinson County Superior Court following a hearing on a complaint for removal. It also sets forth the grounds by which a mayor may be removed, including incompetence, misfeasance, or malfeasance in office. Plaintiffs in this action allege that grounds for removal, if proven, are established by Mayor Lue's alleged violations of the Open Meetings Act, along with other alleged

24

wrongdoing. Nevertheless, a complaint for removal from office is one that must be asserted against the office holder, in her individual capacity, not against the office.[15] But as noted above, plaintiffs did not name the Mayor in her individual or personal capacity, but only in her capacity as mayor. Consequently, the trial court erred in denying Mayor Lue's motion to dismiss that portion of the complaint seeking removal from office.

Judgment affirmed in part and reversed in part. All the Justices concur.

---

[15] By analogy, the writ of quo warranto to challenge the right of a person to hold a specific public office, pursuant to OCGA § 9-6-60, is a proceeding against a named individual. See *Malone v. Minchew*, 170 Ga. 687 (153 SE 773) (1930); see also *Lopez v. Bd. of Ed. of Bridgeport*, 310 Conn. 576, 591 (81 A3d 184) (2013) ("[A] writ of quo warranto must be directed toward the objectionable person holding an office and exercising its functions in his or her individual capacity." (Citations and punctuation omitted.))

Decided June 15, 2015.

Equity. Wilkinson Superior Court. Before Judge Reeves, from Middle Circuit.

Wayne B. Kendall, for appellant.

Sell & Melton, Michael D. Cooper, for appellees.